## STATE EX REL. JOHN D. PITTMAN v. RALPH H. TAHASH.

170 N. W. (2d) 445.

August 22, 1969—No. 41026.

*C. Paul Jones,* State Public Defender, and *Robert E. Oliphant,* Assistant State Public Defender, for appellant.

---

*Douglas M. Head,* Attorney General, *Richard H. Kyle,* Solicitor General, and *J. Dennis O'Brien,* Special Assistant Attorney General, for respondent.

Heard before Knutson, C. J., and Otis, Rogosheske, Sheran, and Peterson, JJ.

ROGOSHESKE, JUSTICE.

Appeal from an order denying postconviction relief.

Subsequent to the selection of two jurors to try defendant upon two indictments charging him with first-degree murder in the deaths of two fellow inmates of the Moose Lake Prison Farm, defendant, with consent of the state, advice of counsel, and leave of court, withdrew his plea of not guilty to both charges and entered pleas of guilty to reduced charges of second-degree murder. The court accepted these pleas, adjudged defendant guilty of the charges, and on October 20, 1965, imposed two concurrent sentences of 40 years. On January 4, 1967, defendant applied for a writ of habeas corpus claiming that his convictions were obtained in violation of his constitutional rights. Following a plenary·evidentiary hearing on February 2, at which defendant testified, the habeas court, upon findings that the allegations made by defendant were "false, untrue, sham, and frivolous," denied relief.

On this appeal, defendant contends that the evidence before the habeas court established that he was denied due process of law in the proceedings which resulted in his convictions. In support of his contention defendant claims that his guilty pleas were induced (1) by a genuine misapprehension of his constitutional and legal rights regarding the admissibility of confessions he gave to the superintendent of the State Reformatory for Men, who was also in charge of the prison farm, and to the Carlton County sheriff; and (2) by prejudicial pretrial publicity and the failure of the trial court to grant his pretrial motion for a change of venue.

Briefly summarized, the record shows that the murders oc-

curred on August 6, 1965, at the minimum security penal farm located near Moose Lake, Minnesota, which is operated in conjunction with the State Reformatory. After defendant's escape from the farm and his arrest by Carlton County authorities, he was returned to the Reformatory at approximately 12:30 a. m. on August 7 and was placed in solitary confinement. At about 11:00 a. m. he gave an oral confession to the superintendent. In the late afternoon or early evening, the Carlton County sheriff obtained a written confession. Upon defendant's motion to suppress both confessions, which was heard the day before the trial, both were ruled admissible. The record of the suppression hearing shows that the confession obtained by the sheriff was given after appropriate warnings to defendant of his constitutional rights to counsel and to remain silent. This, however, cannot be said with respect to the confession made to the superintendent. No Miranda warnings preceded the interrogation which occurred while defendant was held under solitary confinement. Rather, the superintendent assured defendant that he was not acting as a police officer, but was merely performing his administrative responsibilities.

It also appears from the record that shortly after defendant's apprehension and arrest, the prosecutor, the sheriff, and other police officers made statements, extensively quoted and published by the news media, that defendant had confessed "the knife and butcher cleaver attacks which killed [the two fellow inmates]" and other statements concerning their observations of defendant's attitudes and conduct following his capture and their theories regarding his possible motives. Defendant's pretrial motion for a change of venue on the ground of massive prejudicial publicity was denied subject to renewal if difficulties in obtaining impartial jurors in Carlton County were experienced on voir dire.

When the case was called for trial on October 20, 1965, no unusual difficulties were experienced in impaneling the first two

prospective jurors examined. It was at this point, after a recess requested by defendant, that he asked leave to plead guilty to reduced charges.

It must be borne in mind that this is not a direct appeal from the judgments of conviction. It is an appeal from a collateral attack upon the judgments, based in essence upon the claim that the defendant's pleas of guilty were improperly induced or indeed coerced by deficiencies in procedural due process preceding their tender and acceptance. Questions concerning whether defendant was denied due process as a matter of law by reason of adverse rulings of the trial court upon his motions for a change of venue and for suppression of his confessions are not directly presented for review, as they were in Irvin v. Dowd, 366 U. S. 717, 81 S. Ct. 1639, 6 L. ed. (2d) 751, and Moore v. Michigan, 355 U. S. 155, 78 S. Ct. 191, 2 L. ed. (2d) 167. The question we must answer here is whether the evidence submitted in this postconviction proceeding sustains the findings and determination of the habeas court that defendant's contentions are not true and that his convictions are, in fact, based on the voluntary pleas of guilty to reduced charges which resulted from his personal acknowledgment at the time the pleas were accepted that he did, in fact and in law, commit the acts constituting murder in the second degree. See, State ex rel. Drysdale v. Tahash, 278 Minn. 361, 154 N. W. (2d) 691. Our careful examination of the record as a whole convinces us not only that such is the case, but also that no injustice resulted, and that the evidence sufficiently supports the refusal by the habeas court to grant postconviction relief.

While we acknowledge our obligation to extend a broad review of both questions of law and fact in postconviction proceedings, in accordance with our responsibility to vindicate a denial of fundamental rights and thereby prevent manifest injustice,[1] the scope of our review is not unlimited.

---

[1] See, Kopetka v. State, 283 Minn. 525, 167 N. W. (2d) 39. See, also,

Where there is adequate evidence to sustain findings by a postconviction court on matters of fact, as in this case, and the findings are not manifestly and palpably contrary to the weight of the evidence, we are not inclined to substitute our view of the evidence for that of the postconviction court. Since the resolution of fact issues rests in a large degree on the credibility of the petitioner at the postconviction hearing, we cannot say that the decision of the habeas court in this case is without evidentiary support or that it is manifestly contrary to the weight of the evidence. And this is so even though there was evidence to support defendant's claim that his pleas were improperly induced and that he was denied full protection of his constitutional rights. We believe that the superintendent was obliged, as was the sheriff, to give a Miranda warning before eliciting a confession from defendant and, therefore, that the oral confession obtained by the superintendent without giving such a warning should have been held inadmissible. Nevertheless, we agree that there was evidence to sustain a finding that the confession given to the sheriff was not prejudicially tainted by the constitutional inadequacies of the prior oral confession.

However, we cannot condone the actions of those associated with the prosecution in making available for publication the kind of out-of-court statements made by them which this record reveals. Undoubtedly these statements were made without intending to influence the outcome of defendant's forthcoming trial, but they seriously threatened to have that effect upon prospective jurors residing in the community. It is difficult to believe that such statements serve any significant law-enforcement function. In addition, it is now agreed not only by those associated with the prosecution and defense, but also by the news media, in this and a host of other jurisdictions, that such out-of-court statements made at or near the time of arrest should not be made

A. B. A. Project on Minimum Standards for Criminal Justice, Standards Relating to Post-Conviction Remedies (Approved Draft, 1968) § 5.3.

public unless they are necessary for the protection of **public** safety or serve a significant law-enforcement **function.**[2]

Affirmed.

---

[2] The Fair Trial-Free Press Council of Minnesota, consisting of representatives of the courts, law-enforcement officers, and media of all types, has issued the following recommended guidelines relating to adult criminal proceedings:

"I.

"The following information generally *should* be made public at, or immediately following, the time of arrest:

"(A) The Accused's name, age, residence, employment, marital status and similar background information.

"(B) The substance or text of the charge, such as is, or would be contained in a complaint, indictment, or information.

"(C) The identity of the investigating and arresting agency and the length of the investigation.

"(D) The circumstances immediately surrounding an arrest, including the time and place of arrest, resistance, pursuit, possession and use of weapons, and a description of items seized at the time of arrest.

"II.

"The following information generally *should not* be made public at, or immediately after, the time of arrest:

"(A) Statements as to the character or reputation of an accused person.

"(B) Existence or contents of any confession, admission or statement given by the accused, or his refusal to make a statement.

"(C) Performance or results of tests, or the refusal of an accused to take such a test.

"(D) Expected content of testimony, or credibility of prospective witnesses.

"(E) Possibility of a plea of guilty to the offense charged or to a lesser offense, or other disposition.

"(F) Other statements relating to the merits, evidence, arguments, opinions or theories of the case."