STATE v. ROBERT ALAN HIRT.
ROBERT ALAN HIRT v. STATE.

214 N. W. 2d 778.

February 1, 1974—Nos. 43394, 43900.

C. *Paul Jones,* State Public Defender, and *Mark W. Peterson,* Assistant State Public Defender, for defendant.

*Warren Spannaus,* Attorney General, *Curtis D. Forslund* and *Jonathan H. Morgan,* Solicitors General, *Jon K. Murphy* and *Robert F. Carolan,* Special Assistant Attorneys General, and *Paul J. Doerner,* County Attorney, for the state.

PER CURIAM.

After pleading guilty to burglary and receiving the maximum sentence of imprisonment authorized by Minn. St. 609.58, subd. 2(1)(a), defendant filed a direct appeal from the judgment of conviction. Thereafter, while the appeal was stayed, defendant sought postconviction relief alleging that his plea was not freely and voluntarily made, that

his counsel did not adequately represent him, and that there was no factual basis for the plea. After a hearing on this petition before a different judge from the one who accepted defendant's guilty plea, the postconviction court granted relief on the ground that the plea was not freely and voluntarily made. Pursuant to Minn. St. 590.06, the state, contending that the postconviction court erred in granting relief, appeals from the order granting relief and from an order denying a motion for rehearing. In his separate appeal, which we have consolidated with the state's appeal for purposes of consideration, defendant contends that the postconviction court erred in finding and concluding that his counsel adequately represented him and that there was a sufficient factual basis for the plea.

The facts are these: At approximately 4 a. m. on Saturday, April 3, 1971, defendant, who was on probation after having been convicted in 1970 of three separate burglary charges, was stopped by police in the village of St. Joseph, arrested, and charged with participating (as the driver) in the burglary of the El Paso Club. Police also arrested two of defendant's companions inside the club. A search of the glove compartment of defendant's automobile produced wallets belonging to the two men arrested inside the club.

The police record shows that that afternoon police attempted to interrogate defendant but stopped when defendant indicated he wished to talk with an attorney first.

The following Monday, April 5, 1971, before he had talked with an attorney, defendant stated that he wished to talk to Stearns County Deputy Sheriff Lawrence Kritzeck, who had been the complaining witness in the other three burglary convictions. Defendant testified at the postconviction hearing that during this conversation Kritzeck told him that if he didn't cooperate he would be charged with being a habitual offender and would receive 40 years. Neither defendant nor the state called Kritzeck, who was present at the postconviction hearing, to give his version of what he said during this conversation. In any event, later that day defendant signed a written confession in which he admitted that for $20 he had agreed to drive the other two to the scene of the burglary and wait for them outside. In this same statement, he confessed to participating in the burglary of Sal's Cafe in St. Joseph one week earlier and in the attempted burglary of the El Paso Club also one week earlier.

The following morning defendant appeared in municipal court and talked for the first time with his attorney. Defendant testified at the postconviction hearing that his attorney told him that, since defendant had confessed, there was very little the attorney could do. Defendant

testified further that he told the attorney of his fear of being charged as a habitual offender but was told not to worry about that, to put it out of his head, and that the habitual offender law had nothing to do with him. According to defendant, this temporarily relieved his anxiety about a 40-year sentence but the fears returned when moments later in court Kritzeck asked for large bail on the ground that defendant was a habitual offender.

Defendant testified that he talked briefly with his attorney before his arraignment that afternoon but did not recall discussing the habitual offender matter with him because—

"Well, I didn't want to blow it, like if I went in there and this was brought up and they turned down my plea of guilty, then I would have had to gone to a jury trial, and Kritzeck had mentioned something that I better not cause all this trouble, you know, by going through a jury trial and things, that if I would say exactly like was in the statement they would accept my plea of guilty."

Prior to entering his plea of guilty, defendant signed the standard form of petition to enter a plea of guilty. In this petition he stated that "no officer or agent of any branch of government (Federal, State or Local), nor any other person, has made any promise or suggestion of any kind to me, or within my knowledge to anyone else, that I would receive a lighter sentence, or probation, or any other form of leniency, if I would plead 'GUILTY', * * * I declare that I offer my plea of 'GUILTY' freely and voluntarily and of my own accord * * *."

In addition, at the time of his arraignment, he was questioned concerning the petition to enter a plea of guilty and agreed that his attorney had previously read the form out loud to him while he was looking right at it with his attorney, that he understood it, and that there was nothing on it that he questioned.

Also, at the time of arraignment, defendant was questioned by his attorney about his confession and whether or not he had gone over the confession with the attorney, whether his attorney had asked about the truthfulness of it and any threats, and if he had advised defendant of his rights. He agreed that that was correct. At the arraignment he was asked the following questions by the county attorney and gave the following answers:

"Q. * * * Now, your offer to plead guilty here is made freely and voluntarily and unconditionally?

"A. Yes.

"Q. Have there been any threats or any promises made by me or by anyone else to induce you to enter a plea of guilty?

"A. No.

\* \* \* \* \*

"Q. Why are you pleading guilty today?

"A. I feel, you know, I am wrong, I just want to get the whole mess cleared up because I am, you know, I was—sat in jail for the past—over a year, and I just don't want to sit another year, you know, a big hassle fighting it out in court.

"Q. You feel that you are guilty of the crime of burglary of the El Paso Club on April 3, 1971?

"A. Yes, I am definitely guilty."

It is important to note that the reason given by defendant for pleading guilty at that time did not include his present contention that he pleaded guilty because he was afraid of the habitual offender law. Thus, even if he had been told that he might be given a 40-year sentence under a habitual offender law, he did not give that as a reason for pleading guilty.

Also, at the arraignment, the county attorney stated that he did not intend to charge defendant with the burglary of Sal's Cafe and another attempted burglary of the El Paso Club in the light of his cooperation and guilty plea.

At the time of his postconviction hearing, the defendant was also asked by the county attorney:

"Q. Well, is it your testimony today that you didn't know they were going to commit a burglary before you went out there?"

To this question, he gave the following answer:

"A. I can't really say I didn't know. I had an idea that something of that nature was going to go on, but it wasn't discussed, you know. It was probably discussed between them, but I wasn't included. I was just earning $20.00 by driving seven miles."

At that same hearing, he was questioned by his then attorney as to how he happened to have the wallets of the two men arrested inside the El Paso Club. In the course of that testimony he stated he was approached by the two of them who told him, "We'll give you $20.00 if you drive us out to St. Joe." He was then asked if they told him why they wanted to go to St. Joseph. His answer was, "They just said they had some business to take care of."

This testimony does not square with testimony given at the same hearing by Richard Rawlings, the attorney who represented defendant at the time of arraignment:

"Q. Were you satisfied that there was in fact a factual basis on rec-

ord when Bob pleaded guilty before Judge Rosengren for his being an accomplice to this crime?

"A. Yes.

"Q. And that was based on the fact that he admitted that he had discussed the burglary with Soder and Freeman before they went to the El Paso Club?

"A. That was based on what Robert had told me in private, that he had talked about the burglary, that when he had burglarized the El Paso sometime prior to that there was a writeup in the St. Cloud paper that $4,000 had been taken, that Soder and Freeman talked to him about the amount of money that was taken, that they wanted to go out and knock over or burglarize the El Paso. He gave them a ride to the El Paso. This is Robert telling me this. That he furnished the—."

Thus, the attorney's testimony in part corroborates the defendant's testimony at the time of his arraignment, that there was a discussion among the three of them about burglarizing the El Paso Club and that he went to St. Joseph for that purpose.

In addition, his arraignment attorney testified at the postconviction hearing that there never was any conversation by the defendant with him about the habitual offender law.

Notwithstanding defendant's lack of candor, that he had the burden of proof, and that his testimony at the postconviction hearing was inconsistent with: (1) the statements in the petition to plead guilty, (2) his sworn testimony at the arraignment that his plea was voluntary and not induced by any threats or promises, and (3) his initial reasons given for pleading guilty, the postconviction court found that defendant's plea was not freely and voluntarily given but was induced by threats.

Under the A. B. A. Standards for Criminal Justice, which this court has followed in numerous guilty plea withdrawal cases, a defendant who can show manifest injustice is entitled as a matter of right to withdraw his plea of guilty whether or not his sentence has been imposed.[1] If sentence has not been imposed, the trial court in its discretion may permit withdrawal even if defendant cannot show manifest injustice,

---

[1] A. B. A. Standards for Criminal Justice, Standards Relating to Pleas of Guilty (Approved Draft, 1968) § 2.1, provides:

"(a)  The court should allow the defendant to withdraw his plea of guilty or nolo contendere whenever the defendant, upon a timely motion for withdrawal, proves that withdrawal is necessary to correct a manifest injustice.

"(i)  A motion for withdrawal is timely if made with due diligence,

provided the prosecution has not been substantially prejudiced by reliance upon the defendant's plea. In this case defendant waited until after sentencing before he sought to withdraw his plea; therefore, the court below could permit withdrawal only to correct a manifest injustice. The state contends that the defendant at both his arraignment and at his postconviction hearing freely admitted his guilt and that, because he is guilty and does not contend otherwise, there can be no manifest injustice in not allowing withdrawal of the plea. However, the A. B. A. Standards are to the contrary. Because involuntariness of a guilty plea does constitute such a manifest injustice as to entitle a defendant to withdraw his plea, if we follow the standards we must affirm the order in this case on the present record since we are not left with the firm conviction that a mistake has been made. State, by Head, v. Paulson, 290 Minn. 371, 188 N. W. 2d 424 (1971).

The postconviction court, in finding that defendant's plea was not freely and voluntarily given but was induced by threats, stated that it

---

considering the nature of the allegations therein, and is not necessarily barred because made subsequent to judgment or sentence.

"(ii)   Withdrawal is necessary to correct a manifest injustice whenever the defendant proves that:

(1)   he was denied the effective assistance of counsel guaranteed to him by constitution, statute, or rule;

(2)   the plea was not entered or ratified by the defendant or a person authorized to so act in his behalf;

(3)   the plea was involuntary, or was entered without knowledge of the charge or that the sentence actually imposed could be imposed; or

(4)   he did not receive the charge or sentence concessions contemplated by the plea agreement and the prosecuting attorney failed to seek or not to oppose these concessions as promised in the plea agreement.

"(iii)   The defendant may move for withdrawal of his plea without alleging that he is innocent of the charge to which the plea has been entered.

"(b)   In the absence of a showing that withdrawal is necessary to correct a manifest injustice, a defendant may not withdraw his plea of guilty or nolo contendere as a matter of right once the plea has been accepted by the court. Before sentence, the court in its discretion may allow the defendant to withdraw his plea for any fair and just reason unless the prosecution has been substantially prejudiced by reliance upon the defendant's plea."

based this finding on, among other things, the fact that defendant testified to that effect and the fact that the state did not call Kritzeck to refute defendant's testimony.

In view of the fact that defendant's testimony at the postconviction hearing conflicted with his earlier testimony under oath, the state apparently assumed that the postconviction court would not believe defendant's testimony at the postconviction hearing and for that reason failed to call Kritzeck to refute that testimony. However, the postconviction court was impressed by the fact that the state did not call Kritzeck and reasoned that an adverse inference arose from that fact. Without excusing the state's failure to call Kritzeck at the hearing, we believe that under the unique circumstances of this case it would serve the interests of justice to require that the state's motion for rehearing be granted.

After reviewing the record in this case we are satisfied that defendant's contentions that his counsel inadequately represented him and that there was not a factual basis for the plea are without merit.

Relief denied as to defendant's appeal (No. 43394). Remanded for rehearing on state's appeal (No. 43900).

MR. CHIEF JUSTICE SHERAN, not having been a member of this court at at the time of the submission, took no part in the consideration or decision of this case.