UNITED STATES of America, Appellee,

v.

**Michael DANIELS,**
**Defendant, Appellant.**

No. 86–1218.

United States Court of Appeals,
First Circuit.

Argued Feb. 2, 1987.

Decided June 23, 1987.

---

10. *Id.*

Charles E. Gilbert, III with whom Vafiades, Brountas & Kominsky, was on brief, for defendant, appellant.

David R. Collins, Asst. U.S. Atty., with whom Richard S. Cohen, U.S. Atty., was on brief, for appellee.

Before CAMPBELL, Chief Judge, ALDRICH and BREYER, Circuit Judges.

BREYER, Circuit Judge.

On August 9, 1985, pursuant to a plea agreement, Michael Daniels pleaded guilty to two counts of selling or receiving stolen trucks. 18 U.S.C. §§ 2313, 2315. Ten weeks later, still before sentencing, he asked to withdraw the guilty plea. The district court refused to allow Daniels to withdraw his plea, and he now appeals that refusal. We reverse.

I

The basic facts are as follows. The government charged appellant, Michael Daniels, his brother, Robert Daniels, and his brother-in-law, Frank Carcieri, with trafficking in stolen cars and trucks. The district court set trial for August 5, 1985. Before that day, appellant rejected government suggestions about negotiating a plea and told his counsel to prepare for trial. On August 5, however, with the government ready for trial, appellant joined plea negotiations that were already in progress between the government and his two codefendants. Government counsel made it clear that any possible plea agreement depended on all three defendants pleading guilty.

By two o'clock that afternoon, the parties reached agreement. Both Daniels brothers would plead guilty; Frank Carcieri would enter a plea of nolo contendere; and the government would reduce the charges against all three. In the case of appellant and his brother, the government agreed to dismiss 20 of the 22 counts charged in the indictments and to recommend that both men receive two five-year concurrent sentences on the remaining two counts. In addition, the government agreed to ask state prosecutors to proceed leniently in prosecuting the underlying offenses. In a Rule 11 change-of-plea hearing held on August 9, the district court accepted the two Daniels' guilty pleas. The court later rejected Carcieri's request to plead nolo contendere and set his case for trial.

Ten weeks after the Rule 11 hearing, on October 21, appellant (with new counsel) moved to withdraw his guilty plea. He claimed that he had made the pleas while under "extreme emotional pressure and under a mental disability" and "without an understanding ... [of] the effect of the plea." (Motion to Withdraw Plea of Guilty.) On November 12 the district court sentenced appellant's brother, Robert Daniels. On November 15 appellant asked to withdraw his motion to withdraw the guilty plea, but he later reinstated the motion. After a hearing held on December 16, 1985, and January 3, 1986, the court concluded that Daniels was mentally competent when he pleaded guilty and that he entered the plea knowingly and voluntarily. The court rejected Daniels' motion to withdraw his plea, and on February 21 it sentenced him to two concurrent four-year prison terms. Daniels now appeals the court's refusal to allow him to withdraw his plea.

II

Federal Rule of Criminal Procedure 32(d) provides that if a defendant moves before sentencing to withdraw a guilty plea, the district court "may permit" withdrawal for any "fair and just" reason. *See United States v. Acevedo Ramos*, 810 F.2d 308, 311 (1st Cir.1987); *United States v. Kobrosky*, 711 F.2d 449, 454 (1st Cir.1983); *Nunez Cordero v. United States*, 533 F.2d 723, 725 (1st Cir.1976). The district court is to apply this standard liberally, but the court of appeals will reverse the district court only if the district court acts beyond the delegated authority implied in the rule's word "may." *See Acevedo Ramos*, 810 F.2d at 311 (adopting an "abuse of discretion" standard); *Kobrosky*, 711 F.2d at 454 (same); *Nunez Cordero*, 533 F.2d at 725 (same). In our view, the district court acted beyond its lawful authority in refusing to allow Daniels to withdraw his plea. The government failed to tell the court at the Rule 11 hearing that it had made clear to Daniels that it would not accept guilty pleas from his two codefend-

ants unless he also pleaded guilty. The government's failure to disclose this part of the plea agreement violated Rule 11(e)(2); that violation was not harmless; therefore, in the circumstances of this case, it constitutes (as a matter of law) a "fair and just" reason to allow Daniels to withdraw his plea. *Cf. United States v. Roberts*, 570 F.2d 999, 1012 (D.C.Cir.1977) (holding that the district court abused its discretion in refusing to allow withdrawal of a guilty plea where the government failed to disclose a material part of the plea bargain, the nondisclosure prejudiced the defendant, and the government claimed no prejudice that would result from withdrawal of the plea).

■ Without the government's failure to disclose, it would be a close question whether there was "fair and just" reason to permit the plea withdrawal. On the one hand, appellant waited ten weeks after entering the plea to move to withdraw it (and even then he vacillated, first moving to withdraw the plea, then withdrawing that motion, then reinstating it). Courts have proved most sympathetic to motions to withdraw a guilty plea when those motions are made soon after entering the plea. *See United States v. Barker*, 514 F.2d 208, 222 (D.C.Cir.1975) ("A swift change of heart is itself strong indication that the plea was entered in haste and confusion...."). Moreover, the government claims it will be prejudiced if Daniels is allowed to withdraw his plea. *See United States v. Kobrosky*, 711 F.2d at 455 ("[D]ue consideration must also be accorded to whether the government will suffer undue prejudice as a result of the withdrawal."). The government says that it insisted on negotiating with all three codefendants or with none of them because trying only one of them would be almost as great a burden as trying all three. The district court has now definitively disposed of the charges against appellant's brother. If appellant is now allowed to withdraw his plea, the government argues, he will obtain one of the benefits of his plea bargain (the deal struck with his brother) but will incur none of its burdens.

On the other hand, the government has not alleged that appellant's delay in seeking to withdraw his plea has in any way prejudiced its ability to present its case against him at trial. Moreover, Daniels protested his innocence at the change-of-plea hearing—an "important factor" in determining whether there is fair and just reason to allow him to withdraw his plea. *United States v. Kobrosky*, 711 F.2d at 455; *United States v. Barker*, 514 F.2d at 220. And, most importantly, excerpts from Daniels' Rule 11 hearing cast doubt on the voluntariness of his plea. The record relates the following exchange:

> THE COURT: Has anyone threatened either of you or anyone else, to your knowledge, or forced either of you in any way to plead guilty to these charges?
> [APPELLANT'S BROTHER]: No.
> [APPELLANT]: No. I just got caught between two family members, your Honor.
> THE COURT: I'm sorry?
> [APPELLANT]: I kind of got caught in the middle between two family members.
> THE COURT: You haven't been threatened or forced in any way?
> [APPELLANT]: No, but because of family feelings, I have to go along with what the other two want to do.
> THE COURT: I see.

(Hearing on Defendants' Changes of Plea 16–17.) Appellant's reluctant responses suggest that his two codefendants may have prevailed upon him to plead guilty in order that the government would accept their own guilty pleas. At least arguably, the trial judge should have "undertake[n] a more searching inquiry" and attempted to "resolve the contradiction" between appellant's statements. *Mack v. United States*, 635 F.2d 20, 24–25 (1st Cir.1980) (holding that the trial judge's failure to insure that a guilty plea is "*truly* voluntary" and to "resolve all doubts and questions arising about the guilty plea" is grounds to allow withdrawal (emphasis in original)).

We need not explore the question further, however, for once one adds to these facts the nondisclosure of material terms of the plea agreement, there is "fair and

just" reason to permit withdrawal. Neither party told the court during the Rule 11 hearing that "any possible plea agreement between appellant and his two co-defendants was contingent upon all three entering guilty pleas." (Government's Brief at 8.) Yet Rule 11(e)(2) requires "disclosure of the [plea] agreement," and that means that "the parties are required to inform the trial judge of all the promises that have been made, not only those which they happen to consider important." *United States v. Roberts*, 570 F.2d at 1007; *accord United States v. Blackner*, 721 F.2d 703, 708 (10th Cir.1983). The government argues now that the undisclosed condition was not a "promise" and therefore need not have been disclosed under Rule 11(e)(2). But, did the government not "promise" appellant that, if he pleaded guilty, it would accept pleas from his brother and brother-in-law? Regardless, Rule 11 makes no reference to "promises," but requires disclosure of the plea "agreement," a word that courts have interpreted broadly in light of the rule's purposes:

> There is no standard short of requiring total disclosure of *all material details* of plea agreements that can reliably guarantee that guilty pleas are knowing and voluntary and fully understood by the parties themselves.

*United States v. Roberts*, 570 F.2d at 1007 (emphasis added); *accord United States v. Blackner*, 721 F.2d at 708.

■ Of course, failure to comply with Rule 11(e)(2)'s disclosure requirement will be disregarded if harmless. Fed.R.Crim.P. 11(h) ("Any variance from the procedures required by this rule which does not affect substantial rights shall be disregarded."). But, the advisory committee note on Rule 11 points out that "the kinds of Rule 11 violations which might be found to constitute harmless error upon direct appeal are fairly limited." We cannot say that the failure to disclose at issue here was harmless. Given appellant's previous refusals to negotiate a plea, and given his halting answers at the Rule 11 hearing, *see supra* p. 79, disclosure of the government's all-or-none negotiating position might well have led the court to investigate further into

possible coercion by appellant's codefendants. Further investigation would have produced a fuller record (probably including evidence of mental instability) with which to assess the voluntariness of appellant's plea.

■ Nor can we say that the district court's later hearings (and findings of voluntariness) cured any harm caused by the Rule 11(e)(2) violation. Our conclusion here that a later hearing cannot replace a full inquiry into voluntariness at the time the plea is entered reflects, in part, the facts of this case: the apparent closeness of the question of voluntariness, *see Mack v. United States*, 635 F.2d at 23 (noting that the determination of voluntariness is "[a]t the core" of Rule 11); the government's offer of leniency to a *third party* in exchange for Daniels' plea, *see Bordenkircher v. Hayes*, 434 U.S. 357, 364 n. 8, 98 S.Ct. 663, 668 n. 8, 54 L.Ed.2d 604 (1978) (noting that a prosecutor's offer of leniency to a third party "might pose a greater danger of inducing a false guilty plea"); *United States v. Tursi*, 576 F.2d 396, 398 (1st Cir.1978) (seeing in an offer of leniency to a third party a "greater danger of coercion" that requires the district court to take "special care ... to ascertain the voluntariness of the guilty plea"); and the consequent importance of the issue of non-disclosure. Our conclusion also reflects a prophylactic legal consideration, namely, the desirability (in the interest of judicial efficiency) of creating a full record the first time, at the Rule 11 hearing. *See McCarthy v. United States*, 394 U.S. 459, 465, 89 S.Ct. 1166, 1170, 22 L.Ed.2d 418 (1969) (noting that the procedures established in Rule 11 are "intended to produce a complete record *at the time the plea is entered* of the factors relevant to this voluntariness determination" (emphasis added)); *see also United States v. Kamer*, 781 F.2d 1380, 1383 (9th Cir.1986) (holding that an appellate court should confine its review to the record of the plea proceeding); *United States v. Coronado*, 554 F.2d 166, 170 n. 5 (5th Cir.1977) (same).

These considerations, taken together with the timing of the plea withdrawal

motion (before sentencing) and the relative lack of prejudice to the prosecution, lead us to conclude that there is "fair and just" reason for permitting withdrawal of the plea.

### III

There remains one rather close question. Daniels did not specifically call the nondisclosure problem to the attention of the district court when he asked to withdraw his plea. We will not normally consider a matter raised for the first time on appeal. *See Johnston v. Holiday Inns,* 595 F.2d 890, 894 (1st Cir.1979). We nonetheless consider the issue for two reasons. First, appellant did raise the general issue—the voluntariness of his plea—and the district court specifically considered, in ruling on the motion to withdraw, whether the government's insistence on bargaining with all three codefendants rendered appellant's plea involuntary. *See United States v. Blackner,* 721 F.2d at 705 ("While this specific claim [of Rule 11 violation] was not asserted in the motion, the facts about this issue were clearly developed at the hearing on the motion to withdraw the guilty pleas...."). Second, Rule 11's plea bargaining rules serve not simply to benefit the parties to the agreement, but also to allow the district court to assure that the agreement is just. *See* Fed.R.Crim.P. 11(e)(4) (specifically authorizing the court to reject a plea agreement). Thus, the court has an interest independent of that of the parties in knowing the terms of a plea agreement (indeed, the parties may sometimes have an interest in *less* than full disclosure). Because adherence to Rule 11 protects not only the parties, but also the " 'fairness, integrity [and] public reputation of judicial proceedings,' " other appellate courts have applied the requirement of raising questions below less strictly in the Rule 11 context, sometimes considering Rule 11 violations *sua sponte.* *United States v. Corbett,* 742 F.2d 173, 178 n. 12 (5th Cir.1984) (quoting *United States v. Adams,* 634 F.2d 830, 836 (5th Cir.1981)); *see United States v. Briscoe,* 428 F.2d 954, 957 (8th Cir.1970).

For these reasons, the judgment of the district court is

*Reversed.*