Lucas Roy BUTALA, petitioner,
Appellant,

v.

STATE of Minnesota, Respondent.

No. C2–02–1482.

Supreme Court of Minnesota.

July 3, 2003.

Mark D. Nyvold, St. Paul, MN, for Appellant.

Mike Hatch, Minnesota Attorney General, Thomas R. Ragatz, Assistant Attorney General, St. Paul, MN, Alan L. Mitchell, St. Louis County Attorney, Duluth, MN, for Respondent.

## OPINION

RUSSELL A. ANDERSON, Justice.

Appellant Lucas Roy Butala, in pursuing his first substantive review through post-conviction proceedings, appeals from an order of the district court denying his request to withdraw his guilty pleas to first-degree murder. Appellant challenges the voluntariness of his pleas and the adequacy of defense counsels' representation. Concluding that the district court did not err in denying appellant's request to withdraw his pleas and that appellant received effective assistance of counsel, we affirm.

On August 4, 1999, appellant was charged by indictment with four counts of first-degree murder, in violation of Minn. Stat. § 609.185(1) and (3) (2002), and one count of arson, in violation of Minn.Stat. § 609.561, subd. 1 (2002), in connection with the September 5, 1998 deaths of Gene Olson and Michael Mickalich in a house fire in Eveleth, Minnesota. The state alleged that appellant started the fire by igniting gasoline that had been poured on one or both of the men as they slept. Appellant had previously been charged by complaint with two counts of second-degree murder for these deaths, and a contested omnibus hearing was held on June 14–15, 1999. Trial was scheduled to commence on January 13, 2000.

As the trial date drew nearer, appellant and defense counsel engaged in a fairly serious discussion about a plea option; and at some point, appellant requested immunity from prosecution for certain members of his family, a home-cooked meal with his mother, and jail contact visits with his family as part of an agreement. On January 5, 2000, in a telephone conference involving the trial court and counsel for ap-

pellant and the state, the trial court told counsel that the court would accept no plea agreement that included contact visits and meals as it was beyond his control. Also on January 5, 2000, with the assistance of defense counsel, appellant completed and signed a Rule 15 plea petition, the terms and conditions of which recited that he would plead guilty to the two counts of first-degree felony-murder, with arson as the predicate felony, in exchange for two concurrent life sentences and the dismissal of the remaining charges.[1] Defense counsel went over the petition with appellant "line by line," and appellant filled it out completely in his own handwriting. On January 6, 2000, the prosecutor sent a letter to defense counsel "certifying * * * that in exchange for [appellant's] pleas of guilty to the two Counts of First Degree Murder[,]" the county attorney's office would not prosecute any member of appellant's immediate family for any criminal offenses arising out of or coming to light as a result of the homicide investigation. The letter indicated that the agreement was consistent with representations that had been made by various law enforcement agencies to appellant's family throughout the course of the homicide investigation. The letter further indicated that the prosecutor would continue to facilitate appellant's requests for contact visits with his family and a meal prepared for him by his mother.

On January 7, 2000, the prosecutor filed a letter with the court outlining the terms of the plea agreement, but this letter made no mention of family-member immunity and contact visits. That same day, appellant appeared in district court with his lead trial attorney and assisting co-counsel and entered pleas of guilty. The court then conducted a Rule 15 inquiry. *See* Minn. R.Crim. P. 15.01. Appellant stated he was not making any claim of innocence to either of the two counts to which he had entered guilty pleas.

■ Appellant confirmed that he had been given adequate time to consult with his attorneys as to the way in which his case was handled and to discuss the plea agreement. Defense counsel and the court questioned appellant thoroughly about his knowledge of the rights he was waiving, the voluntariness of the pleas, and his understanding of the plea agreement. Appellant confirmed that he was entering the pleas "of [his] own free will" and that there was nothing about the Rule 15 petition or the plea agreement that was "outstanding" or that he did not understand. Appellant told the court that he remembered telling his father that he killed two men. Appellant said that one of the men was "talking about snitching" on his father and "talking bad stuff" about his father; that appellant "got angry," and "lost it;" and that appellant remembered telling his brother that he was responsible for setting the fire. Because appellant's memory was somewhat limited, appellant agreed to the court's reliance on the grand jury transcript for purposes of ensuring an adequate factual basis for the pleas, stating that he had no reason to dispute the accuracy of the testimony of those witnesses.[2]

1. With the exception of certain enumerated predicate crimes, first-degree felony murder carries with it a mandatory life sentence. Minn.Stat. § 609.185(3) (2002) (mandatory life for first-degree murder); Minn.Stat. § 609.106, subd. 2 (2002) (life without release for specified felony murders). A person serving a mandatory life sentence for first-degree felony-murder becomes eligible for parole after serving a minimum of 30 years. Minn. Stat. § 244.05, subd. 4 (2002). Thus, it was to appellant's advantage to serve his life sentences concurrently rather than consecutively.

2. A defendant may plead guilty without admitting guilt if he or she has no memory, through amnesia or intoxication, of the of-

During the plea proceedings, there was no mention of the January 6, 2000 letter. Although the pleas of guilty to first-degree felony-murder carried mandatory life sentences, because restitution was to be a part of the disposition, the court ordered a pre-sentence investigation for the purpose of determining restitution and set sentencing for February 24, 2000.

On February 22, 2000, appellant submitted a pro se motion to withdraw his pleas, claiming that he was innocent, that he was under mental and emotional stress at the time of the pleas, that he had not been "provided with proper counsel," and that the prosecutor had "made deals with [him] behind the judge's back * * *." In his response, the prosecutor submitted a memorandum in which he disclosed the contents of the January 6, 2000 letter promising family immunity from prosecution. At the sentencing hearing, when appellant's attorneys declined to speak in support of the motion, appellant orally reiterated the claims he had made in his written submission. The court denied appellant's motion, concluding that the pleas were voluntary and intelligent and, after reviewing the grand jury testimony, that the factual basis requirement had been satisfied; that appellant was not adversely affected by mental and emotional stress; and that his attorneys had adequately represented him. After the court denied his motion and after hearing victim impact statements, appellant requested that he be given consecutive life sentences, rather than concurrent life sentences as provided in the plea agreement. The request was granted.

Twenty-two months later, now represented by conflicts counsel, appellant filed a petition for postconviction relief, again seeking withdrawal of his pleas and also asking that his sentences be amended to run concurrently. Appellant's claims for plea withdrawal essentially mirrored those made prior to sentencing and, in addition, included a claim that he should have been afforded substitute counsel when his attorneys stepped aside and declined to advance his motion to withdraw his pleas. At the evidentiary hearing, appellant's lead trial attorney testified that promises of immunity from prosecution for family members and contact visits "came up" at appellant's request, but she could not recall whether the immunity for family members had been discussed with the court during the January 5 phone conference. She confirmed that the court had not received the prosecutor's January 6 letter of understanding at the time of the plea proceedings. She indicated that she explained to appellant that the court would not accept a plea agreement containing certain conditions, and she was certain that she explained to appellant that promises contained in the January 6 letter but not included in the Rule 15 petition were not a part of the plea agreement and that he would have to rely on the prosecutor's word. She indicated the January 6 letter resulted from a request to have "something in writing" from the prosecutor. Appellant's trial co-counsel also testified that appellant understood that family immunity from prosecution and contact visits were not a part of the plea agreement. Co-counsel explained there had been some concern about criminal liability for aiding an offender after the fact for certain members of appellant's family but that the prosecutor "had always indicated that he

fense. *State v. Ecker,* 524 N.W.2d 712, 716 (Minn.1994) (citing *State ex rel. Norgaard v. Tahash,* 261 Minn. 106, 113–14, 110 N.W.2d 867, 872 (1961)). For a *Norgaard* plea, "the

trial court must affirmatively ensure an adequate factual basis has been established in the record." *Ecker,* 524 N.W.2d at 717.

was not going to proceed against those people."

Appellant testified that he thought promises not to prosecute his family, continued contact visits, and a home-cooked meal were all part of the plea agreement. He testified that he received no assistance in preparing his motion to withdraw his pleas. He acknowledged that, before he entered his pleas, he was aware that the court had refused to accept a plea with terms beyond the court's control.

The postconviction court denied appellant's request to withdraw his pleas, concluding that withdrawal was not necessary to correct a manifest injustice where the pleas were voluntarily given and that appellant had not established a fair and just reason for withdrawal. The postconviction court said the fact that the pleas may have been linked to leniency to third persons did not make appellant's pleas invalid. The court further determined that the absence of representation in the plea withdrawal motion was moot. However, the court granted appellant's request for sentencing relief, modifying appellant's life sentences to run concurrently in accordance with the plea agreement. This appeal followed.

### I.

■ In keeping with our responsibility to vindicate a denial of fundamental rights and thereby prevent manifest injustice, we have an "obligation to extend a broad review of both questions of law and fact in postconviction proceedings." *State ex rel. Pittman v. Tahash*, 284 Minn. 365, 368, 170 N.W.2d 445, 447 (1969). Nevertheless, our scope of review is not unlimited; and on factual matters, our review is limited to whether there is sufficient evidence in the record to sustain the postconviction court's findings. *Id.* On issues of law, we exercise de novo review. *E.g.,*

*Rairdon v. State*, 557 N.W.2d 318, 324–25 (Minn.1996); *State v. Knaffla*, 309 Minn. 246, 253–54, 243 N.W.2d 737, 741–42 (1976).

■ As an initial matter, the state suggests that appellant's 22–month delay in obtaining appellate review is sufficient grounds for denying his petition. Certainly, delay is one relevant factor against granting relief, and in extreme cases may justify denial of relief. *Rairdon*, 557 N.W.2d at 322 (citing *Gaulke v. State*, 296 Minn. 487, 487, 206 N.W.2d 652, 652 (1973) (relief denied based on 25–year delay)). But we have a commitment to convicted defendants' rights to at least one substantive review. *Rairdon*, 557 N.W.2d at 322 (9–year delay did not preclude review on the merits); *Hoagland v. State*, 518 N.W.2d 531, 536 (Minn.1994) (8–year delay alone did not preclude relief because the burden is on the state to establish undue prejudice by delay); *Riggers v. State*, 284 Minn. 543, 543–44, 169 N.W.2d 58, 59 (1969) (33–year delay did not preclude relief). Here, we see no substantive basis for denying review of appellant's petition on the merits because of delay.

■ A valid guilty plea "must be accurate, voluntary, and intelligent (i.e., knowingly and understandingly made)." *Perkins v. State*, 559 N.W.2d 678, 688 (Minn.1997). After entry of the guilty plea and before sentence, the court, in its discretion, may allow the defendant to withdraw his plea for any fair and just reasons unless the prosecution has been substantially prejudiced. Minn. R.Crim. P. 15.05, subd. 2. "[T]he ultimate decision of whether to allow withdrawal under the 'fair and just' standard is 'left to the sound discretion of the trial court, and it will be reversed only in the rare case in which the appellate court can fairly conclude that the trial court abused its discretion.'" *State v. Kaiser*, 469 N.W.2d 316, 320 (Minn.1991)

(quoting *Kim v. State,* 434 N.W.2d 263, 266 (Minn.1989)). However, after entry of the guilty plea and either before or after sentence, upon timely motion, a defendant has a right to withdraw his guilty plea at any time if the defendant can establish at the hearing on the motion to withdraw or at the postconviction hearing that withdrawal is necessary to correct a manifest injustice. Minn. R.Crim. P. 15.05, subd. 1. The " 'involuntariness of a guilty plea * * * constitute[s] such a manifest injustice as to entitle a defendant to withdraw his plea.' " *State v. Danh,* 516 N.W.2d 539, 544 (Minn. 1994) (quoting *Hirt v. State,* 298 Minn. 553, 558, 214 N.W.2d 778, 782 (1974)).

■ Appellant argues that he was entitled to withdraw his guilty pleas because he entered them involuntarily. He contends that the pleas were induced by government promises to facilitate contact visits and immunity from prosecution for his family, terms not disclosed to the trial court at the time of the plea proceedings. With regard to the contact visits, appellant testified that the proposal for visits originated with him. He testified that he was informed the trial court would not accept a plea including terms over which the court had no control but that he was told, in a subsequent meeting with his attorneys and the prosecutor, that the prosecutor would nevertheless make "good-faith efforts" to "facilitate" those visits. As the trial court concluded, this was not the kind of unqualified promise that would entitle appellant to withdraw his pleas. *Perkins,* 559 N.W.2d at 689 (citing *Schwerm v. State,* 288 Minn. 488, 491, 181 N.W.2d 867, 868 (1970) (record made clear that defendant's own counsel told him that prosecutor's statement would not bind the court)).

■ Appellant also argues that his pleas were involuntary because they were induced in part by promises of immunity from prosecution for members of his fami-

ly, again terms not disclosed to the trial court at the time of the pleas. Contingent plea agreements, in which a defendant enters a plea agreement in exchange for leniency for a third party, are not per se invalid. *Danh,* 516 N.W.2d at 542 (citing *United States v. Marquez,* 909 F.2d 738, 741 (2nd Cir.1990); *In re Ibarra,* 34 Cal.3d 277, 193 Cal.Rptr. 538, 666 P.2d 980, 986 (1983)). Nevertheless, "package deal" plea agreements are generally considered "dangerous because of the risk of coercion; this is particularly so in cases involving related third parties, where there is a risk that a defendant, who would otherwise exercise his or her right to a jury trial, will plead guilty out of a sense of family loyalty." *Danh,* 516 N.W.2d at 542. We concluded in *Danh* that the standard Rule 15.01 inquiry was insufficient to ascertain the voluntariness of a contingent plea and held that "the state must fully inform the trial court of the details of these agreements at the time a defendant enters a 'package deal' plea, and the trial court must then conduct further inquiries to determine whether the plea is voluntarily made." *Danh,* 516 N.W.2d at 542. We noted factors employed by other courts in assessing the voluntariness of contingent pleas. *Id.* at 543.

■ In recognition that the prospect of a third-party benefit poses a greater risk of undue pressure upon a defendant than the chance to secure a reduced sentence, in *Danh* we went on to hold that:

> In future cases, a defendant must be allowed to withdraw his or her guilty plea if the state fails to fully inform the trial court of the nature of the plea, or if the trial court fails to adequately inquire into the voluntariness of the plea at the time of the guilty plea.

*Id.* at 542–43. We are truly dismayed, therefore, by the parties' failure in this case to lay the entire agreement, including

the January 6, 2000 "letter of understanding," before the trial court at the plea proceedings. Nevertheless, in opposing appellant's subsequent motion to withdraw his guilty pleas, the prosecutor did in fact inform the court of the letter of understanding, including that the promise not to prosecute family members was consistent with prior representations to the family.[3] As the postconviction court concluded, the coercive effect of offers of leniency for family members was absent. Moreover, it was appellant who proposed immunity for family members. *See Marquez*, 909 F.2d at 742 (noting that undue pressure is least likely when the third-party arrangements originate with the defendant). Here the trial court conducted a thorough Rule 15.01 inquiry, and appellant said he understood the plea agreement, denied that there was anything "outstanding," and stated that he was entering the pleas of his own free will. Under the circumstances, we think it inappropriate for appellant, the originator of the third-party arrangements who, when asked by the trial court also failed to disclose the arrangements, be allowed to withdraw the pleas as a *Danh* sanction.[4]

## II.

Appellant also sought the withdrawal of his pleas prior to sentencing under the fair and just standard, citing as grounds that he was innocent, was under emotional and mental stress at the time of the pleas, had been misled as to the facts of his case, and had received inadequate representation. In denying appellant's motion, the trial court relied on its own recollection of the Rule 15.01 inquiry in finding that appellant's pleas were accurate, voluntary and intelligent. The court also determined that an adequate factual basis had been established through appellant's own testimony and the testimony of grand jury witnesses and that defense counsels' representation was more than adequate. The trial court, which had observed appellant's demeanor at the plea hearing, concluded that appellant had failed to show a fair and just reason to allow the withdrawal of the pleas. We have carefully reviewed the Rule 15.01 inquiry and find ample support for the trial

---

3. Our independent review of the record confirms no intent on the part of law enforcement or the county attorney's office to seek criminal charges against appellant's family.

4. It is probably worth reiterating, in light of the dissent, that the prophylactic rule announced in *Danh* involved nondisclosure of material details of a package deal plea agreement initiated and pressed by the government. *Danh*, 516 N.W.2d at 540. Here, by contrast, out of concerns apparently generated by intimations of possible criminal liability for family members, and none made by the prosecution, appellant sought and obtained the agreement memorialized in the January 6, 2000 letter, certifying the promise of family immunity "in exchange" for appellant's pleas. That letter went on to say: "This agreement is consistent with representations that have been made to [appellant's] family throughout the course of the investigation by the various law enforcement agencies involved, as well as by [the prosecutor], with respect to the testimony of those individuals before the Grand Jury * * *." Although the government may have an overwhelming duty to fully disclose its offer, as a general rule, the duty to disclose the elements of a plea agreement is shared by the prosecutor and defense counsel. *See, e.g.,* *United States v. Hernandez*, 79 F.3d 1193, 1194 (D.C.Cir.1996). Certainly, when it comes to nondisclosure of contingent plea agreements, it may be that "a later hearing cannot replace a full inquiry into voluntariness at the time the plea is entered," particularly when there is an "apparent closeness of the question of voluntariness." *United States v. Daniels*, 821 F.2d 76, 80 (1st Cir.1987). But the plea agreement in this case was not part of a package deal; and the postconviction court found the coercion inherent in contingent plea agreements absent, a finding amply supported by the record.

court's conclusion that appellant's guilty pleas were valid. As the postconviction court concluded, appellant established no fair and just reason for withdrawal of his pleas prior to sentencing. *See United States v. Gray*, 152 F.3d 816, 820 (8th Cir.1998) (concluding that there was no fair and just reason for the defendant to withdraw his guilty plea despite the emotional manner in which he admitted his guilt).

Appellant nevertheless argues that the absence of representation in his plea withdrawal motion affords a fair and just basis on which he should be allowed to withdraw his pleas. Appellant brought a pro se motion to withdraw his pleas at sentencing. Both of his attorneys stepped aside, indicating conflicts of interest that might compromise their ability to proceed with trial should the motion be granted.[5] Appellant asserts that the trial court erred in failing to provide substitute counsel or standby counsel after obtaining a valid waiver of counsel.

 Certainly the better procedure would have been to afford substitute counsel for purposes of making the motion. Nevertheless, the record reflects the trial court gave the motion serious consideration, taking care to review appellant's stated reasons and factual support as well as all of the relevant materials before making his ruling. The record further reflects that in his presentence motion, appellant succinctly articulated essentially the same facts and grounds for plea withdrawal as were presented through independent coun-sel in postconviction proceedings. Finally, as the postconviction court concluded, with the assistance of independent counsel, appellant fully litigated his claims of a right to withdraw his pleas under the "fair and just" standard. We think that sufficient. *Cf. Kaiser*, 469 N.W.2d at 320 (remanding for rehearing and reconsideration under "fair and just" standard where the district court failed to grant request to testify at hearing on presentence motion to withdraw plea).

### III.

 Finally, appellant asserts he received ineffective representation in negotiating a plea agreement with "off-the-record terms." We have said that the "voluntariness of the plea depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases." *State v. Ecker*, 524 N.W.2d 712, 718 (Minn.1994) (internal quotations omitted). We look first as to whether counsel's performance was deficient, namely, "that * * * representation fell below an objective standard of reasonableness." *Id.* (quoting *Strickland v. Washington*, 466 U.S. 668, 688, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)) (internal quotations omitted). Second, we consider whether the defendant has shown that this deficient performance prejudiced his or her defense. *Ecker*, 524 N.W.2d at 718. To establish this prejudice, a defendant must show that " 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceed-

---

5. At postconviction, appellant's lead trial attorney reasserted that she stepped aside from advancing the motion because appellant had made her a witness, adding that she would have had to contradict appellant's allegations as to what defense counsel had said and done in their representation of him; that she did not withdraw completely because she wanted to maintain her ability to represent appellant at trial if the motion were to be granted; and that she had been representing appellant for essentially a year. The lead trial attorney also said the District Public Defender's position was that if appellant was making allegations in his motion that his public defenders knew not to be true, they could provide appellant with the relevant rules and statutes but they could not advance the motion.

ing would have been different.' " *Id.* (quoting *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052).

Here, according to the trial court, defense counsel—always prepared, well-informed, and very effective advocates—more than adequately represented appellant. Defense counsel successfully negotiated a very attractive plea agreement for appellant which demonstrates the adequacy of their representation. Defense counsel assisted appellant in filling out the Rule 15 petition, explaining line-by-line the petition and the various constitutional rights involved. St. Louis County had a very strong case against appellant; and by pleading guilty, appellant had the benefit of concurrent sentencing. Appellant's primary complaint is that defense counsel negotiated a contingent plea that was not disclosed to the trial court at the plea proceeding. But appellant was the one who proposed those terms. He has failed to show with "reasonable probability" that he would have not pleaded guilty but for the claimed errors of counsel.

We hold that withdrawal of appellant's guilty pleas was not required to correct a manifest injustice or for fair and just reason, and that he received effective assistance of counsel. We affirm.

### DISSENT

PAGE, Justice dissenting.

I respectfully dissent. Based on the record before us, our precedent, and that of the United States Supreme Court, I can only conclude that Butala should have been able to withdraw his guilty plea. Therefore, I would reverse the district court's denial of Butala's request to withdraw his guilty plea.

To constitute a valid guilty plea, the plea, when made, must be accurate, voluntary, and intelligent. *See Kaiser v. State,*

641 N.W.2d 900, 903 (Minn.2002). The voluntariness requirement is designed to ensure that the plea is not the product of improper inducements or pressure. *State v. Kaiser,* 469 N.W.2d 316, 319 (Minn. 1991). This requirement is implicated when the plea involves a "package deal," an agreement in which the defendant agrees to plead guilty in exchange for leniency for a third party, especially when the third party is related to the defendant. *State v. Danh,* 516 N.W.2d 539, 542 (Minn. 1994). In *Danh,* noting that "the standard Minn. R.Crim. P. 15.01 inquiry cannot adequately discover coercion in these cases," we held

> that the state must fully inform the trial court of the details of these agreements at the time a defendant enters a "package deal" plea, and the trial court must then conduct further inquiries to determine whether the plea is voluntarily made.[4] In future cases, a defendant must be allowed to withdraw his or her guilty plea if the state fails to fully inform the trial court of the nature of the plea, or if the trial court fails to adequately inquire into the voluntariness of the plea at the time of the guilty plea. This holding is in accordance with those cases which hold that trial courts must take extra steps to determine the voluntariness of these types of pleas. *E.g., In re Ibarra,* 193 Cal.Rptr. at 544, 666 P.2d at 986.

*Id.* at 542–43. Footnote 4, it its entirety, reads:

> We agree with the First Circuit Court of Appeals that "a later hearing cannot replace a full inquiry into voluntariness at the time the plea is entered." *United States v. Daniels,* 821 F.2d 76, 80 (1st Cir.1987). We also note that the Supreme Court has stated, "There is no adequate substitute for demonstrating *in the record at the time the plea is*

*entered* the defendant's understanding of the nature of the charge against him." *McCarthy v. United States,* 394 U.S. 459, 470, 89 S.Ct. 1166, 1173, 22 L.Ed.2d 418 (1969) (emphasis in original). Because voluntariness is equal in importance to knowingness, it should also be apparent from the record at the time of the plea. *See Boykin v. Alabama,* 395 U.S. 238, 242, 89 S.Ct. 1709, 1711, 23 L.Ed.2d 274 (1969) ("It was error, plain on the face of the record, for the trial judge to accept petitioner's guilty plea without an affirmative showing that it was intelligent and voluntary[.]").

Finally, this court, in *State v. Casarez,* 295 Minn. 534, 536, 203 N.W.2d 406, 408 (1973), similarly held that a guilty plea must appear *on the record* to have been voluntarily and intelligently made. In that case, we noted that the transcripts from the appellant's guilty plea and sentencing hearings were so incomplete that we could not determine whether the appellant had "properly waived all of his rights." We went on to note, "Nor is there anything in the record showing that the trial judge discussed the consequences of the plea so that defendant would have a full understanding of its consequences."

*Id.* at 542.

At least two federal circuit courts of appeal have found that the state is required to disclose not just those promises that are considered important, but all promises that have been made by the prosecution to the defendant. *See United States v. Daniels,* 821 F.2d 76, 80 (1st Cir.1987); *United States v. Blackner,* 721 F.2d 703, 708 (10th Cir.1983); *see also United States v. Roberts,* 570 F.2d 999, 1007 . (D.C.Cir.1977) (concluding that "[t]here is no standard short of requiring total disclosure of all material details of plea agreements that can reliably guaran-

tee that guilty pleas are knowing and voluntary and fully understood by the parties themselves").

In this case, the district court accepted Butala's plea based on the inquiry required by the Rule 15.01 petition. However, the Rule 15.01 petition contained no mention of the state's promise as set out in the January 6, 2000, letter, which contained the following terms:

Per our discussions concerning the plea agreement in the above-referenced matter, I am certifying to you at this time that in exchange for your client's pleas of guilty to the two Counts of First Degree Murder involving the intentional deaths of Gene Olson and Michael Mickalich while committing the crime of Arson, the County Attorney's Office will not prosecute any member of Mr. Butala's immediate family for any criminal offenses arising out of the investigation into the deaths of Gene Olson and Michael Mickalich or for any criminal offenses which may have come to light during the course of the investigation. * * *

Additionally, as I have indicated, I will continue to do all that I can to facilitate the continued contact visits between Mr. Butala and his family, including a visit which would allow the use of a camera so that Mr. Butala can have photographs taken of himself with various of his family members. I will also do what I can to attempt to arrange a contact visit between Mr. Butala and a long-standing friend, Ms. Dana Jordahl. I will also assist in facilitating your client's request regarding the opportunity to have a meal prepared for him by his mother. I can indicate that those matters have been discussed with my division head in Duluth and he has assured me that I would have the backing of our office

should there be some difficulty in facilitating those matters.

While both parties agree that the district court was aware of the discussions regarding Butala's family visits before the January 6, 2000, letter and had clearly informed the state and Butala that the visits could not be accepted as a part of any plea agreement, it appears that the district court did not know that Butala had received a promise that his family members would not be prosecuted as accessories after the fact. Nor did the district court know that, after informing the state and Butala that family visits could not be accepted as part of any plea agreement, family visits remained a part of the agreement between the state and Butala.

At the post-conviction hearing, Chadwick, Butala's attorney during the plea agreement, his mother, and his sister all testified that the police had intimated that charges might be filed against Pat Butala (Butala's father) and Keith Gaul (Butala's brother) for being accessories after the fact and for dealing drugs. Butala further testified that the police and BCA agents had told him that his father, brother, and stepmother were possibly looking at charges of accessory after the fact and could face up to half the amount of time Butala would receive if he was convicted unless he accepted the terms of the plea. Butala testified that he was concerned about the prosecution of family members because he was told that, if he was found guilty, each family member would get a life sentence. It appears that, based on these statements, Butala sought to obtain promises from the state that his family would not face prosecution for their criminal acts.

While the simple presence of a benefit to a third party does not automatically render a guilty plea invalid, I am troubled by the court's affirmation of a plea agreement that is in part based on terms not before the district court when the plea agreement was accepted. Moreover, the court's affirmance ignores the additional inquiry required by *Danh.* As we stated in *Danh,* it is the state's burden to provide the district court with all the details of the plea agreement. *State v. Danh,* 516 N.W.2d 539, 542–43 (Minn.1994). By focusing solely on the fact that the defendant sought to obtain these agreements from the state, this court misses the purpose underlying Rule 15.01 inquiries—to ensure that the plea was voluntarily made. As we pointed out in *Danh,* ensuring that a plea was voluntarily made requires questioning by the district court at the time of the plea to ensure that the defendant not only understands the charges before him, *but also* to ensure that the plea comports with constitutional requirements. *Id.* It is simply not enough to conduct an inquiry after the plea has been entered in a prophylactic attempt to create a record as to whether the defendant's plea is voluntary. *See Daniels,* 821 F.2d at 80.

It is even more distressing that the court is not troubled by the fact that Butala was forced to represent himself in bringing his motion to withdraw his guilty plea after his counsel refused to advocate on his behalf. Article I, section 6, of the Minnesota Constitution and Sixth Amendment of the United States Constitution provide that a criminal defendant is entitled not only to the assistance of counsel, but also to *the effective assistance of counsel.* There is no question here that Butala was denied that assistance.

Without a knowing and voluntary waiver of the right to counsel, of which there is none on record here, Butala had a right to be represented at the motion to withdraw his guilty plea. *See* Minn. R.Crim. P. 5.01(b). While Butala was given "the relevant rules and statutes" in preparation of his motion, there is no indication from the

record that he realized the import of the January 6 letter.[1] Had counsel been appointed to represent Butala, it is doubtful that his counsel would have failed to deliver the letter to the district court or failed to make the associated legal arguments under *Danh.* At a minimum, this would have triggered a more in-depth inquiry by the district court into the voluntariness of Butala's plea. Instead, the record clearly indicates that, at the time Butala's guilty plea was accepted and even after the state's response to Butala's motion to withdraw the guilty plea, the district court still had not seen the terms of the January 6, 2000, letter. Thus, I do not understand how the court could reach the conclusion that "the record reflects the trial court gave the motion serious consideration, taking care to review appellant's stated reasons and factual support as well as all of the relevant materials before making his ruling," when the district court never saw and never knew about the terms set out in the January 6 letter that confirmed the terms of the plea agreement. Further, whether Butala was able to "succinctly articulate[ ] essentially the same facts and grounds for plea withdrawal" as those asserted by his counsel in the post-conviction proceeding is not the proper standard for determining whether he received effective assistance of counsel.

The court attempts to justify the result by relying on Butala's lead trial counsel's statement at the post-conviction hearing that some of the things that Butala had asserted in his motion were untrue. While counsel is barred from presenting false evidence, to the extent that there was some truth to Butala's allegations, Butala had the right to effective assistance of counsel in presenting his motion. The terms of the January 6 letter speak for themselves and on their own are not factually or legally untrue. There is no reason an attorney representing Butala could not have presented this letter as support for Butala's assertion that deals were being made behind the trial court's back. Indeed, his lead trial counsel admitted in Butala's post-conviction hearing that, with the help of counsel, it was quite possible that Butala would have been able to present a different view regarding the terms in the January 6 letter at the time of his motion, which could have resulted in a successful plea withdrawal.

Absent the effective assistance of counsel at the time of the hearing on Butala's motion to withdraw his plea, we do not know nor can we know what the outcome would have been had Butala received such assistance. Hindsight, in this case, is not 20–20.

MEYER, Justice (dissenting).

I join in the dissent of Justice Page.

HANSON, Justice (dissenting).

I join in the dissent of Justice Page.

---

1. The court relies in part on the provision of "the relevant rules and statutes" by Butala's lead trial counsel to him for preparation of his motion. Self-representation by a person not learned in the law but who has access to the "relevant rules and statutes" is not the equivalent of having the assistance, much less the effective assistance of counsel. The notion that it is, is laughable. Requiring Butala to represent himself in preparing for and presenting the motion put him in a worse position than if he had been proceeding pro se, in which case he would at least have had the assistance of standby counsel.