Demetrius Devell DOBBINS,
Petitioner, Appellant,

v.

STATE of Minnesota, Respondent.

No. A09–1872.

Supreme Court of Minnesota.

Sept. 16, 2010.

Demetrius Devell Dobbins, Rush City, MN, pro se.

Lori Swanson, Attorney General, St. Paul, MN; and Robert M.A. Johnson, Anoka County Attorney, Marcy S. Crain, Assistant Anoka County Attorney, Anoka, MN, for respondent.

OPINION

ANDERSON, PAUL H., Justice.

An Anoka County jury found Demetrius Devell Dobbins guilty of first-degree premeditated murder for the death of Quintin Roderick Lavender. We affirmed Dobbins's conviction on direct appeal in 2006. In 2009 Dobbins filed a petition for postconviction relief and the postconviction court denied the petition. Dobbins now appeals the denial of his petition, arguing that he is entitled to postconviction relief because (1) he received ineffective assistance of appellate counsel; (2) the State claimed that he killed Lavender, yet he was charged with and convicted of aiding and abetting a crime; (3) newly discovered evidence establishes a witness testified falsely; and (4) his right to equal protection of the law under the Fourteenth Amendment was violated when our court did not reverse his conviction on the ground of prosecutorial misconduct. We reverse in part and remand to the district court for an evidentiary hearing.

Petitioner Demetrius Devell Dobbins was charged with causing the death of Quintin Roderick Lavender at the home of Dobbins's girlfriend, C.S. *State v. Dobbins,* 725 N.W.2d 492, 498 (Minn.2006). A jury found Dobbins guilty of first-degree premeditated murder and the Anoka County District Court convicted him of that offense and sentenced him to life in prison. *Id.* at 500. We affirmed the conviction. *Id.* at 513. The facts surrounding Lavender's death are thoroughly set forth in *Dobbins* and are recounted here only insofar as they are relevant to this postconviction appeal.

On December 5, 2003, a citizen made a 911 call to report that a homicide had taken place at C.S.'s home. *Id.* at 497. The caller later described to a police officer the two men she believed were involved in the homicide and informed the

officer that the men were returning to the home where the homicide took place. *Id.* After this conversation, the police went to the home and saw Dobbins and Myshohn King walking toward the home carrying lighter fluid. *Id.* Dobbins and King fit the description given by the 911 caller, so the police approached and arrested both men. *Id.*

Dobbins was searched following his arrest. As a result of the search the police ascertained that Dobbins's hands and clothing had gunshot residue on them, and later DNA testing revealed that the pants, shoes, and socks he was wearing at the time of his arrest had some of Lavender's blood on them. *Id.* On January 6, 2004, the Anoka County grand jury indicted Dobbins for first-degree premeditated murder in violation of Minn.Stat. §§ 609.05 and 609.185(a)(1) (2004). *See* 725 N.W.2d at 497–98. The indictment stated that Dobbins "individually and/or while intentionally aiding, advising, hiring, counseling or conspiring with another, caused the death of Quintin Roderick Lavender with premeditation."

C.S., her sisters, and King testified at Dobbins's trial, implicating Dobbins in Lavender's murder. *See id.* at 498 n. 1, 499. According to their testimony, Lavender agreed to sell nine bags of marijuana for Dobbins. *Id.* at 498. Lavender was to give $60 of the proceeds from the sales to Dobbins, but failed to do so. *Id.* Months later, Dobbins and King went to City Center in downtown Minneapolis and saw Lavender. *Id.* Dobbins and Lavender argued about the $60, and Dobbins told Lavender to come to C.S.'s home in Columbia Heights, where Dobbins was staying. *Id.* Eventually, Dobbins, King, and Lavender met at C.S.'s home. *Id.* King testified that while Lavender was at the home, Andre Coleman, Dobbins's cousin, arrived wearing gloves and carrying a gun. King

also testified that Dobbins went into a bedroom with Coleman, came back to the living room, and shot Lavender. *Id.* King stated at trial that Dobbins came into the living room "with the gloves on" and testified that "then Demetrius shot [Lavender] ... I saw it." He gave a further description, stating; "When [Dobbins] just came out, I looked at him. Then he looked at me and he just looked away and just put out the gun and shot [Lavender] twice." According to King, Dobbins asked King to help him clean up the blood and move the body to a shed behind the home. *Id.* at 498–99. During the cleanup, two women, both sisters of C.S., stopped at the home and learned of the murder. *Id.* One sister later spoke with the police and reported the homicide. *Id.* at 499–500.

Dobbins testified at his trial and claimed that on the day of Lavender's murder, he was in his bedroom and Coleman, King, and Lavender were in the living room. *Id.* at 500. Dobbins said that while in the bedroom, he heard a gunshot, ran into the living room, and saw King fire a second shot at Lavender. *Id.* The jury found Dobbins guilty of first-degree premeditated murder "individually and/or while intentionally aiding ... or counseling with another, causing the death of" Lavender in violation of Minn.Stat. §§ 609.185(a)(1) and 609.05. The district court convicted Dobbins of that offense and sentenced him to life in prison. Dobbins appealed.

On direct appeal, Dobbins raised four issues:

(1) whether the district court erred in allowing the only African–American venireperson to be struck from serving on the jury; (2) whether the court violated Dobbins' Sixth Amendment right to effectively cross-examine a key state's witness; (3) whether the court erred in not instructing the jury that Dobbins' girlfriend could have been considered an

accomplice; and (4) whether the state's misconduct denied Dobbins a fair trial, or in the alternative, whether defense counsel's failure to object to the misconduct constituted ineffective assistance of counsel.

*Dobbins,* 725 N.W.2d at 500–01. We concluded that Dobbins's first three claims of error had no merit, *see id.* at 504–06, but we did conclude that the State committed prosecutorial misconduct, *id.* at 507–12. More particularly, we concluded that the State committed prosecutorial misconduct during its cross examination of Dobbins by improperly questioning Dobbins about the exercise of his right of confrontation, eliciting testimony about Dobbins's post-arrest silence and request for counsel, asking a series of "Are they lying?" type questions, injecting issues broader than Dobbins's guilt or innocence by asking him about his relationship with C.S., and highlighting Dobbins's racial and socioeconomic status. *Id.* at 507–12. We also held that the State committed prosecutorial misconduct when it injected personal opinions into the case during closing argument by stating: "I would be honest when I testify. Desperation and self-preservation can lead to some pretty fanciful tales." *Id.* at 512. Even though we concluded the prosecutor committed misconduct, we held that the misconduct was harmless and did not warrant a new trial. *Id.* at 508, 513.

After we affirmed Dobbins's conviction, Dobbins filed a petition for a writ of certiorari with the United States Supreme Court. The Supreme Court denied that petition on June 25, 2007. *Dobbins v. Minnesota,* 551 U.S. 1153, 127 S.Ct. 3021, 168 L.Ed.2d 741 (2007). Dobbins later filed a pro se petition for postconviction relief in Anoka County on February 2, 2009. The postconviction court allowed supplemental briefing, and Dobbins filed a second amended petition on June 8, 2009. In his petition, Dobbins claimed that he is entitled to postconviction relief because (1) his right to equal protection of the law under the Fourteenth Amendment was violated and our decision in *State v. Mayhorn,* 720 N.W.2d 776 (Minn.2006) requires reversal of his conviction; (2) the State claims that he killed Lavender, yet he was charged with and convicted of aiding and abetting a crime; (3) he received ineffective assistance of appellate counsel because appellate counsel failed to raise on direct appeal certain prosecutorial misconduct claims, a claim that Dobbins was improperly convicted of aiding and abetting murder, a speedy trial claim, ineffective assistance of trial counsel claims, and a claim that the grand jury indictment should have been dismissed; and (4) there is evidence of false testimony.

The postconviction court, without holding an evidentiary hearing, concluded that Dobbins's petition is time-barred under Minn.Stat. § 590.01 (2008) because Dobbins's petition was filed more than two years after we issued our opinion affirming Dobbins's conviction. In the alternative, the court found that Dobbins is not entitled to postconviction relief on the ground of ineffective assistance of appellate counsel or newly discovered evidence, and that Dobbins's equal protection claim and argument that he was improperly convicted of an aiding and abetting charge are *Knaffla*-barred.

Dobbins appealed the postconviction court's order denying his petition without an evidentiary hearing. Dobbins argues that the court erred in calculating the two-year period under Minn.Stat. § 590.01, subd. 4, and his petition is not time-barred. He also argues that his claims entitle him to postconviction relief. The State agrees that the postconviction court erred when it ruled that Dobbins's claims were time-barred. But the State argues that the

court correctly ruled that two of Dobbins's claims—his equal protection claim and his claim that he was improperly convicted of aiding and abetting—are procedurally barred under *State v. Knaffla*, 309 Minn. 246, 243 N.W.2d 737 (1976). The State also argues that Dobbins's ineffective assistance of appellate counsel claim does not entitle him to postconviction relief because his appellate counsel's performance did not fall below an objective standard of reasonableness and, moreover, Dobbins was not prejudiced by the actions of his appellate counsel. Finally, the State asserts that Dobbins's claim of newly discovered evidence does not entitle him to relief because the evidence includes inadmissible hearsay and does not demonstrate that any trial testimony was false.

## I.

 We have said that "we have an 'obligation to extend a broad review of both questions of law and fact in postconviction proceedings.'" *Butala v. State*, 664 N.W.2d 333, 338 (Minn.2003) (quoting *State ex rel. Pittman v. Tahash*, 284 Minn. 365, 368, 170 N.W.2d 445, 447 (1969)). Nevertheless, the scope of our review on factual matters is limited to determining "whether there is sufficient evidence in the record to sustain the postconviction court's findings." *Id.*; *see also Pittman*, 284 Minn. at 369, 170 N.W.2d at 447 ("Where there is adequate evidence to sustain findings by a postconviction court on matters of fact, as in this case, and the findings are not manifestly and palpably contrary to the weight of the evidence, we are not inclined to substitute our view of the evidence for that of the postconviction court."). We will not disturb a postconviction court's decision unless the court abused its discretion. *Davis v. State*, 784 N.W.2d 387, 390 (Minn.2010). Under this standard of review, factual findings will not be reversed unless they are clearly

erroneous, *State v. Finnegan*, 784 N.W.2d 243, 247 (Minn.2010), and a matter will not be disturbed "unless the ... court abused its discretion, exercised its discretion in an arbitrary or capricious manner, or based its ruling on an erroneous view of the law," *Almor Corp. v. County of Hennepin*, 566 N.W.2d 696, 701 (Minn.1997). (Citation and internal quotations omitted). We review issues of law de novo. *Butala*, 664 N.W.2d at 338.

Minnesota Statutes § 590.01, subd. 4(a), provides that "[n]o petition for postconviction relief may be filed more than two years after the later of: (1) the entry of judgment of conviction or sentence if no direct appeal is filed; or (2) an appellate court's disposition of petitioner's direct appeal" unless one of the exceptions in subdivision 4(b) applies. The postconviction court found that Dobbins's petition was time-barred under Minn.Stat. § 590.01, subd. 4(a)(2), because Dobbins "failed to file his petition within two years of the disposition of his direct appeal" and Dobbins's "claims do not satisfy the exceptions to the requirement that the claims be asserted within two years" as stated in Minn. Stat. § 590.01, subd. 4(b). When making its decision, the court used the date we released our opinion affirming Dobbins's conviction as the "appellate court's disposition of petitioner's direct appeal."

Dobbins argues that the postconviction court incorrectly reasoned that the "disposition of his direct appeal" occurred when we issued our opinion regarding his direct appeal. He asserts that his postconviction petition was timely because he appealed our decision affirming his conviction by filing a petition for writ of certiorari with the United States Supreme Court. The State agrees with Dobbins that Dobbins's petition is not time-barred. Essentially, the State agrees that Dobbins's two-year period for purposes of section 590.01 began

when the United States Supreme Court denied his writ of certiorari on June 25, 2007, rather than the date we issued our decision affirming Dobbins's conviction—December 28, 2006. According to the State, because Dobbins filed his petition within two years of June 25, 2007, the postconviction court erred in concluding that the petition is time-barred. Because the State agrees with Dobbins on the timeliness issue and has not briefed the issue or argued that Dobbins's petition is time-barred, we will not address the question of whether Dobbins's petition is time-barred and will proceed to address the other issues raised by Dobbins in his postconviction petition.

## II.

We first address whether the postconviction court abused its discretion in concluding that some of Dobbins's claims are *Knaffla*-barred. The court found that Dobbins's equal protection claim and his claim that he was improperly convicted of an aiding and abetting charge are both *Knaffla*-barred. On appeal, Dobbins does not address the court's conclusion that these claims are *Knaffla*-barred but argues that the claims entitle him to relief. The State asserts that the court acted within its discretion when it concluded these claims are *Knaffla*-barred.

■■■ In *State v. Knaffla*, we stated that "where direct appeal has once been taken, all matters raised therein, and all claims known but not raised, will not be considered upon a subsequent petition for postconviction relief." 309 Minn. 246, 252, 243 N.W.2d 737, 741 (1976). An exception to the *Knaffla* rule provides that a claim that was known but not raised may be considered if the claim is so novel that its legal basis was not reasonably available at the time of the direct appeal. *Russell v. State*, 562 N.W.2d 670, 672 (Minn.1997).

In addition, substantive review of a claim is appropriate when fairness so requires and when the petitioner did not "deliberately and inexcusably" fail to raise the issue on direct appeal. *Id.* In other words, any claim known to the petitioner but not raised at the time of his direct appeal is *Knaffla*-barred unless one of the exceptions applies. *Wright v. State*, 765 N.W.2d 85, 90 (Minn.2009).

### Aiding and abetting conviction

■■■ A grand jury indicted Dobbins for first-degree premeditated murder in violation of Minn.Stat. § 609.05, the aiding and abetting statute, and Minn.Stat. § 609.185(a)(1), the first-degree murder statute. At trial, the State's primary theory was that Dobbins shot Lavender, but alternatively argued that if Dobbins did not actually shoot Lavender, Dobbins nevertheless was guilty of first-degree murder because he orchestrated Lavender's murder. The jury found Dobbins guilty of first-degree premeditated murder in violation of Minn.Stat. §§ 609.05 and 609.185(a)(1). Dobbins argues that he is entitled to postconviction relief because the district court convicted him of aiding and abetting a crime that the State "said he committed himself" and that this result "contradicts the natural law of logic."

We conclude that the postconviction court did not abuse its discretion when it concluded that Dobbins's claim is *Knaffla*-barred. Both the indictment and the verdict form list the relevant crime as "Murder in the First Degree," include the aiding and abetting statute, and state that Dobbins "individually and/or while intentionally aiding, advising, hiring, counseling or conspiring with another, causing the death of ... Lavender with premeditation and with intent to effect the death of ... Lavender in violation of [Minn.Stat. § ] 609.185(1) and § 609.05." Dobbins knew

the contents of the indictment and the verdict form, the State's theory of the case, and the nature of his conviction at the time of his direct appeal. Claims that are based on evidence in the trial record and that were known or should have been known to a petitioner at the time of his direct appeal are *Knaffla*-barred. *See Wright*, 765 N.W.2d at 90. Additionally, Dobbins does not contend, nor does it appear, that one of the exceptions to the *Knaffla* rule applies. Accordingly, we hold that the postconviction court did not abuse its discretion in concluding that Dobbins's aiding and abetting claim is *Knaffla*-barred.

*Equal protection claim*

In his postconviction petition, Dobbins argued that we denied him equal protection of the law by affirming his conviction in *Dobbins*, 725 N.W.2d at 513, but reversing Troy Mayhorn's conviction in *State v. Mayhorn*, 720 N.W.2d 776 (Minn.2006). In *Mayhorn*, we held that the cumulative effect of evidentiary errors and multiple incidents of prosecutorial misconduct entitled Mayhorn to a new trial. 720 N.W.2d at 791–92. In contrast, in Dobbins's direct appeal, we concluded that the cumulative effect of the prosecutorial misconduct committed in Dobbins's trial did not entitle him to a new trial and affirmed his conviction. *Dobbins*, 725 N.W.2d at 513. The postconviction court concluded that Dobbins's equal protection claim is *Knaffla*-barred because the court found that Dobbins could have asserted the claim on direct appeal.

██ On this postconviction appeal, Dobbins fails to address the postconviction court's conclusion that his equal protection claim is *Knaffla*-barred, but continues to assert that we violated his equal protection rights. The State argues that the postconviction court did not abuse its discretion. According to the State, Dobbins knew or should have known of the *Mayhorn* opinion "while his direct appeal was pending,"[1] and therefore his equal protection claim is *Knaffla*-barred. We disagree.

Regardless of when Dobbins became aware of our *Mayhorn* decision, he did not know of his equal protection claim until we affirmed his conviction because Dobbins's claim is that we violated his equal protection rights by affirming his conviction. Because Dobbins's claim that we violated his equal protection rights did not arise until *after* we affirmed his conviction on direct appeal, the postconviction court abused its discretion in concluding that Dobbins's equal protection claim was *Knaffla*-barred.

██ Nevertheless, Dobbins is not entitled to postconviction relief on his equal protection claim because the claim is meritless. The Equal Protection Clause requires that similarly situated individuals receive equal treatment. *State v. Frazier*, 649 N.W.2d 828, 837 (Minn.2002). Equal protection claims are usually asserted in the context of challenging statutory classifications. *See, e.g., State v. Merrill*, 450 N.W.2d 318, 321 (Minn.1990). There is no support for Dobbins's assertion that the Equal Protection Clause guarantees that defendants charged with committing different crimes and who had different trials are entitled to the same outcome on direct appeal. Therefore, we hold that Dobbins's equal protection rights were not violated and he is not entitled to postconviction relief on equal protection grounds.

## III.

We next address whether the postconviction court abused its discretion in con-

---

1. We issued our opinion in *Mayhorn* on August 31, 2006, after we heard argument for Dobbins's direct appeal on March 6, 2006, but before we issued our opinion in Dobbins's direct appeal on December 28, 2006.

cluding that Dobbins is not entitled to relief on the ground of ineffective assistance of appellate counsel. The court made extensive findings on Dobbins's ineffective assistance of appellate counsel claim, concluding the claim did not entitle him to postconviction relief. Dobbins asserts that the court erred in concluding he is not entitled to relief on the ground of ineffective assistance of appellate counsel. He claims that appellate counsel's representation fell below the customary skills and diligence of a reasonably competent attorney and that there is a reasonable probability that, but for appellate counsel's errors, the result of his appeal would have been different. More specifically, Dobbins asserts that he received ineffective assistance of appellate counsel because on direct appeal his counsel failed to (1) allege six additional instances of prosecutorial misconduct; (2) challenge the aiding and abetting conviction; (3) challenge the denial of his demand for a speedy trial; (4) raise ineffective assistance of trial counsel claims; and (5) challenge the district court's denial of his motion to dismiss the grand jury indictment.[2]

■■■■ We review ineffective assistance of counsel claims de novo because such claims involve mixed questions of law and fact. *Opsahl v. State*, 677 N.W.2d 414, 420 (Minn.2004). In order to be entitled to postconviction relief, Dobbins must show that his appellate counsel's "representation fell below an objective standard of reasonableness and that there is a reasonable probability that, but for counsel's unpro-

fessional errors, the result of the proceeding would have been different." *Id.* at 420–21 (citations omitted) (internal quotation marks omitted). "That objective standard is defined as representation by an attorney exercising the customary skills and diligence that a reasonably competent attorney would perform under similar circumstances." *Id.* at 421 (citations omitted) (internal quotation marks omitted). Additionally, we have repeatedly stated that we generally will not review attacks on counsel's strategy. *Id.*

The showing required for Dobbins to receive an evidentiary hearing regarding his ineffective assistance of appellate counsel claims is lower than that required to receive a new trial. *See id.* at 423. A postconviction court must hold an evidentiary hearing "[u]nless the petition and the files and records of the proceeding conclusively show that the petitioner is entitled to no relief." Minn.Stat. § 590.04, subd. 1 (2008). We have interpreted section 590.04 to require the petitioner to allege facts that, if proven, would entitle him to relief. *Opsahl*, 677 N.W.2d at 423. We must determine whether the court erred in denying Dobbins an evidentiary hearing on the ground that appellate counsel was ineffective. If the petition and the files and records of the proceeding conclusively show that Dobbins is entitled to no relief on the ground of ineffective assistance of appellate counsel, the court did not abuse its discretion by denying Dobbins an evidentiary hearing.

---

2. The State argues that Dobbins's claims regarding the denial of his right to a speedy trial, the improper denial of his motion to dismiss the grand jury indictment, and ineffective assistance of trial counsel are *Knaffla*-barred. It appears that Dobbins addresses these issues to support his assertion that his appellate counsel provided ineffective assistance of counsel when she did not raise the claims on appeal; Dobbins does not assert that these errors alone entitle him to postconviction relief. Further, the postconviction court addressed the claim in the context of ineffective assistance of appellate counsel. When raised as ineffective assistance of appellate counsel claims, the claims are not *Knaffla*-barred because Dobbins could not have raised ineffective assistance of appellate counsel claims on direct appeal. *See Schleicher v. State*, 718 N.W.2d 440, 448–49 (Minn.2006).

*Additional prosecutorial misconduct claims*

Dobbins's appellate counsel raised several prosecutorial misconduct claims on direct appeal. We agreed with Dobbins that there were multiple instances of misconduct, but determined that a new trial was not warranted. *Dobbins*, 725 N.W.2d at 513. Dobbins now argues that if appellate counsel would have raised the additional prosecutorial misconduct claims he articulates in his postconviction petition regarding the State's cross-examination of Dobbins and statements the State made during closing argument, we would have ordered a new trial on direct appeal because of the cumulative effects of the misconduct.

 Dobbins has not alleged facts that show that his appellate counsel's failure to raise additional prosecutorial misconduct claims was unreasonable. We have said that "[c]ounsel appealing a criminal conviction has no duty to raise all possible issues." *Dent v. State*, 441 N.W.2d 497, 500 (Minn.1989). We have also said that "[l]awyers representing appellants should be encouraged to limit their contentions on appeal at least to those which may be legitimately regarded as debatable." *Case v. State*, 364 N.W.2d 797, 800 (Minn.1985) (citation omitted) (internal quotation marks omitted). In *Dent*, we explained that in reviewing an assertion of ineffective counsel, the question is "whether the representation and the assistance were reasonable in the light of all the circumstances," not whether counsel raised each claim the appellant wanted her to raise. 441 N.W.2d at 500.

Here, appellate counsel was obviously aware of the issue of prosecutorial misconduct and successfully raised several prosecutorial misconduct claims on direct appeal. Further, it appears that the additional prosecutorial misconduct claims that Dobbins argues his appellate counsel should have raised lack merit. We conclude that appellate counsel's decision to advance some prosecutorial misconduct claims and not other meritless claims was a reasonable strategic decision. *See Schleicher v. State*, 718 N.W.2d 440, 449 (Minn.2006) ("Because appellate counsel's failure to raise meritless claims does not constitute deficient performance, [petitioner's] claim of ineffective assistance of appellate counsel fails on the performance prong."). By selecting and advancing specific prosecutorial misconduct claims, Dobbins's appellate counsel exercised the customary skills and diligence of a reasonably competent attorney. Because we conclude appellate counsel's representation in selecting certain prosecutorial misconduct claims to bring on direct appeal did not fall below an objective standard of reasonableness, we need not reach the prejudice prong.

*Aiding and abetting charge*

 The verdict form submitted to the jury and signed by the jury foreperson states that Dobbins is guilty of murdering Lavender in violation of Minn.Stat. § 609.185(a)(1) and Minn.Stat. § 609.05. Dobbins argues that appellate counsel's representation was ineffective because counsel did not challenge the fact that Dobbins was convicted of aiding and abetting murder under Minn.Stat. § 609.05. Underlying Dobbins's ineffective assistance of counsel claim is his argument that he was wrongly convicted of aiding and abetting the Lavender murder because the State's theory at trial was that Dobbins shot Lavender.

 This argument lacks merit. While the State's primary theory at trial was that Dobbins shot Lavender, it alternatively argued that if Dobbins did not actually shoot Lavender, Dobbins orchestrated the murder. Moreover, accomplice liability is a

theory of criminal liability, not an element of a criminal offense or separate crime. In *State v. Britt* we said that "there is no separate crime of criminal liability for a crime committed by another person." *State v. Britt,* 279 Minn. 260, 263, 156 N.W.2d 261, 263 (1968). The jury concluded that the State proved the elements of first-degree murder—either because it found that Dobbins himself committed murder, or because it found he aided and abetted another in committing murder—and convicted Dobbins of first-degree murder, not the crime of "aiding and abetting." We have held that appellate counsel's representation is not ineffective because counsel fails to raise a meritless claim. *See Schleicher,* 718 N.W.2d at 449. Because the claim that Dobbins was improperly convicted of aiding and abetting murder lacks merit, we conclude that this ineffective assistance of appellate counsel fails on the performance prong.

*Denial of speedy trial*

■ At an omnibus hearing, Dobbins asserted his right to a speedy trial, and the district court then set trial to begin several weeks later on June 21, 2004. Two weeks before trial, the State moved for a continuance. The district court granted the motion, finding there was good cause for the delay, and the trial eventually began on October 11, 2004, more than sixty days after Dobbins's speedy trial demand. Appellate counsel did not appeal the district court's decision to grant the State this nearly four-month continuance. Dobbins argues that appellate counsel's failure to raise this issue constitutes ineffective assistance of counsel. The postconviction court determined that appellate counsel exercised "the customary skills and diligence of a reasonably competent attorney when the speedy trial issue was not raised on appeal."

We agree with the postconviction court's determination. Appellate counsel did not have a duty to raise all possible issues on direct appeal and had no duty to raise meritless claims. *See Schleicher,* 718 N.W.2d at 449; *Dent,* 441 N.W.2d at 500. Appellate counsel was reasonable in choosing not to challenge Dobbins's conviction on the ground that he was denied a speedy trial. When we consider the four-part balancing test from *Barker v. Wingo,* 407 U.S. 514, 530–33, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972) to determine whether a trial delay constitutes a deprivation of the right to a speedy trial, it appears that the district court did not deny Dobbins his right to a speedy trial. *See State v. Windish,* 590 N.W.2d 311, 315 (Minn.1999) (applying the four-part *Barker* test used to determine whether a defendant has been deprived of his right to a speedy trial). Therefore, we conclude that appellate counsel's representation did not fall below an objective standard of reasonableness by failing to raise the speedy trial issue on direct appeal, and we need not reach the prejudice prong.

*Ineffective assistance of trial counsel*

■ Dobbins argues that appellate counsel was ineffective because she did not raise ineffective assistance of trial counsel challenges on direct appeal. Dobbins asserts that trial counsel was ineffective because counsel did not object to the district court's order to limit the time period when individuals could enter or leave the courtroom to times when there were breaks in the trial. The court's order does not appear to have unreasonably restricted public observance of Dobbins's trial. Dobbins did not have a valid argument that the court was denying his right to a public trial. As previously noted, counsel is not ineffective where counsel fails to raise meritless claims. *State v. Hurd,* 763 N.W.2d 17, 36 n. 21 (Minn.2009). Because we conclude that trial counsel was not

ineffective by failing to object to the court's order setting conditions for entering and leaving the courtroom during breaks, we also conclude that appellate counsel's failure to assert on direct appeal that trial counsel was ineffective did not constitute ineffective assistance of appellate counsel. *See Leake v. State,* 737 N.W.2d 531, 542–43 (Minn.2007).

■ Dobbins additionally argues that trial counsel was ineffective for failing to present favorable evidence, namely, that Dobbins already owned a gun and so therefore would not have called his cousin on the day of the murder to bring him a gun so he could kill Lavender. The presentation of evidence is a matter of trial strategy, and we will not review attacks on trial strategy. *See Opsahl,* 677 N.W.2d at 421. Because we conclude that trial counsel's decision to refrain from presenting evidence of Dobbins's gun ownership involved trial strategy and was not ineffective, we also conclude that appellate counsel's failure to challenge trial counsel's decision on direct appeal did not constitute ineffective assistance of counsel. *See Leake,* 737 N.W.2d at 542–43.[3]

### Grand jury indictment

■ Before trial, Dobbins moved the district court to dismiss the grand jury indictment on the ground that the grand jury proceedings did not substantially comply with the requirements prescribed by law. *See* Minn. R.Crim. P. 17.06, subd. 2(2). More specifically, Dobbins asserted that witness testimony included inadmissible evidence, the grand jury was improperly instructed to consider only the charge of first-degree murder, and the grand jury was improperly instructed on the aiding and abetting statute. The court denied the motion. In this postconviction proceeding, Dobbins argues that appellate counsel was ineffective for not challenging the district court's denial of Dobbins's motion to dismiss the grand jury indictment.

■ A grand jury determines whether "there is probable cause to believe the accused has committed a particular crime." *State v. Greenleaf,* 591 N.W.2d 488, 498 (Minn.1999). We have said: "A presumption of regularity attaches to the indictment and it is a rare case where an indictment will be invalidated.... [A] criminal defendant bears a heavy burden when seeking to overturn an indictment." *Id.* The burden is heavier for a defendant who raises the issue on direct appeal after he has received a fair trial and been found guilty beyond a reasonable doubt. *Id.*

Dobbins asserts that some of the testimony at the grand jury proceeding contained inadmissible evidence and that the State knowingly committed misconduct in the presentation of this evidence. The allegedly inadmissible evidence included character evidence regarding Dobbins's relationship with his girlfriend and hearsay statements made by an eyewitness to the murder. We have explained that "[t]he fact that grand jurors may have heard inadmissible evidence is not sufficient to dismiss an indictment if there is sufficient admissible evidence to establish probable cause." *Greenleaf,* 591 N.W.2d. at 498. We have also explained that an indictment should be dismissed if the State "knowingly committed misconduct in the presenta-

---

3. In his petition to the postconviction court, Dobbins also argued that trial counsel was ineffective for failing to conduct further investigation regarding two potential witnesses. The postconviction court found that Dobbins's petition did not demonstrate that trial counsel was ineffective, and therefore concluded that appellate counsel was not ineffective. Dobbins did not address the court's conclusions regarding this argument in his brief to our court; therefore, we do not address this argument.

tion of evidence" and either the misconduct substantially influenced the grand jury's decision to indict or "the court is left with grave doubt that the decision to indict was free of any influence of the misconduct." *State v. Montanaro*, 463 N.W.2d 281, 281 (Minn.1990) (order). Even if the evidence Dobbins challenges was inadmissible, we conclude that there was sufficient admissible evidence admitted at the grand jury proceeding to establish probable cause, including testimony from C.S.'s sisters regarding Dobbins's attempt to clean up evidence of the murder and his statements admitting his involvement in murder. Moreover, Dobbins has not shown that the State knowingly committed misconduct in the presentation of evidence to the grand jury and that the misconduct substantially influenced the grand jury's decision to indict. *See id.* The State did not intentionally solicit character evidence, and because the hearsay evidence was independently presented through admissible evidence, it did not substantially influence the grand jury's indictment decision even if misconduct was committed.

Dobbins additionally asserts that the State improperly submitted only one charge to the grand jury: aiding and abetting first-degree premeditated murder. Although the State instructed the grand jury on Minn.Stat. § 609.185(a)(1), first-degree premeditated murder, and Minn. Stat. § 609.05, the aiding and abetting statute, the record does not suggest that the State foreclosed the grand jury from considering lesser charges.

Finally, Dobbins argues that the State improperly suggested that regarding the aiding and abetting statute, the grand jury had to consider only whether Dobbins premeditated the murder, rather than whether Dobbins assisted in the commission of the crime. Dobbins takes the State's comments to the jury out of con-

text. After the State explained the applicable statutes—Minn. Stat. §§ 609.185(a)(1) and 609.05—and completely listed the elements of first-degree murder, a juror asked whether they had to find premeditation to indict Dobbins for aiding and abetting first-degree premeditated murder. The State directed the juror to the language of the aiding and abetting statute and explained that the jury would need to find premeditation to indict Dobbins for aiding and abetting. The State correctly instructed the grand jury regarding the elements of the crime of first-degree premeditated murder, and therefore substantially complied with the requirements prescribed by law.

Here the record of the proceeding conclusively showed that appellate counsel was not ineffective in failing to challenge the grand jury indictment on direct appeal. Given the high burden a defendant has in seeking to overturn an indictment on appeal and the weakness of Dobbins's claims that the grand jury proceeding did not substantially comply with the requirements prescribed by law, challenging the grand jury indictment on direct appeal would not have been successful. Therefore, appellate counsel's representation did not fall below an objective standard of reasonableness by failing to raise the indictment claim.

Because we conclude that Dobbins has not alleged facts that entitle him to relief and because the files and records conclusively show that appellate counsel was not ineffective, we hold that the postconviction court did not abuse its discretion in denying Dobbins an evidentiary hearing on the ground of ineffective assistance of appellate counsel.

### IV.

Dobbins also asserts that Myshohn King testified falsely at Dobbins's trial. He

supports this assertion with an affidavit from Darryl Harris. In the affidavit, Harris avers that King confessed to him that King accidentally shot Lavender with Andre Coleman's gun while attempting to scare Lavender. Harris also states that King admitted that he blamed the murder on one of his co-defendants in order to receive a lighter prison sentence. In the affidavit, Harris states, "Myshohn informed me that he accidentally killed someone by the name of Quintin (last name unknown to me) and that he had to blame the murder on one of his co-defendants in order to receive the prison time he was sentenced too [sic]." Harris also states that King explained that "he initially flashed the gun for a few seconds before he shot at Quintin with the gun a couple of times [and] that ... he was trying to aim down along side a chair where Quintin was sitting when he pulled the trigger but Quintin had moved into the way of the gun." Dobbins asserts that he is entitled to a new trial because of this evidence of King's false trial testimony. The postconviction court found that other witnesses corroborated King's trial testimony and that Dobbins's petition did not establish that King's testimony was false. The court then concluded that Dobbins is not entitled to relief on the ground of recantation evidence.

On appeal, Dobbins argues that King was the State's key witness and that Harris's affidavit demonstrates that King's testimony was false. Dobbins asserts that under the test from *Larrison v. United States,* 24 F.2d 82, 87–88 (7th Cir.1928), *overruled by United States v. Mitrione,* 357 F.3d 712, 718 (7th Cir.2004), we should grant him a new trial. The State argues that under the four-prong test from *Rainer v. State,* 566 N.W.2d 692, 695 (Minn. 1997), Dobbins is not entitled to postconviction relief.

■ The question before us is whether Dobbins is entitled to an evidentiary hearing or new trial based on this evidence of false testimony. Because Dobbins argues he is entitled to relief on the ground of false testimony, the *Larrison* test, rather than the *Rainer* test, applies. *See State v. Caldwell,* 322 N.W.2d 574, 584–85 (Minn. 1982); *see also, e.g., Ferguson v. State,* 645 N.W.2d 437, 442 (Minn.2002) ("A three-prong test, known as the *Larrison* test, is applied to claims of newly-discovered evidence of falsified testimony.").[4] The *Larrison* test provides that a new trial may be granted on the ground of false testimony when: (1) the court is reasonably well satisfied that the testimony in question was false; (2) that without the testimony the jury might have reached a different conclusion; and (3) that the petitioner was taken by surprise at trial or did not know of the falsity until after trial. *See, e.g., Caldwell,* 322 N.W.2d at 584–85. We have held that the third prong is not a condition precedent for granting a new trial, but

---

**4.** The Harris affidavit includes exculpatory evidence—that King shot Lavender, rather than Dobbins—as well as evidence of false testimony. Dobbins does not allege that he is entitled to postconviction relief on the basis of the exculpatory evidence, and therefore we address only the false testimony claim under *Larrison,* rather than additionally considering whether the exculpatory evidence entitles Dobbins to relief under the newly discovered evidence test from *Rainer.* Under *Larrison,* the substance of King's statements to Harris is relevant only to determine whether his testimony is false under the first prong of the *Larrison* test. The substance of the recantation has no relevance to the second prong of the *Larrison* test, whether the jury might have reached a different conclusion. Regarding the second prong, we consider only the impact that King's allegedly false testimony had on the jury, rather than guess what impact the substance of his recantation would have on the jury.

rather a factor a court should consider when deciding whether to grant the petitioner's request. *Opsahl v. State,* 677 N.W.2d 414, 423 (Minn.2004).

We conclude that Dobbins is not entitled to a new trial based on his petition alone because he has not satisfied the first prong of the *Larrison* test. Dobbins's assertion that King's testimony was false is supported only by Harris's affidavit. Based on the hearsay evidence in the affidavit, it cannot be said that the postconviction court abused its discretion when it denied Dobbins a new trial on the ground that it was not reasonably well satisfied that King's testimony was false. *Cf. Ferguson,* 645 N.W.2d at 445–46 (concluding that prong one of the *Larrison* test was not satisfied based upon hearsay affidavit for purposes of new trial analysis).

The next question is whether Dobbins nevertheless alleged sufficient facts to warrant an evidentiary hearing, at which the postconviction court could then determine whether Dobbins is entitled to a new trial on the ground of newly discovered evidence of false testimony. *See Wilson v. State,* 726 N.W.2d 103, 106–07 (Minn.2007). As stated above, the showing required for Dobbins to receive an evidentiary hearing is lower than that required to receive a new trial. *See Opsahl,* 677 N.W.2d at 423. Minnesota Statutes § 590.04, subd. 1 (2008), mandates that a postconviction court hold an evidentiary hearing "[u]nless the petition and the files and records of the proceeding conclusively show that the petitioner is entitled to no relief." In other words, a postconviction court must hold a hearing if a petitioner alleges facts that, if proven, would entitle him to relief. *Opsahl,* 677 N.W.2d at 423. A petitioner's allegations must be "more than argumentative assertions without factual support." *Id.* (citations omitted) (internal quotation marks omitted).

Dobbins alleges that King told Harris he accidentally shot Lavender and "blame[d] the murder on one of his co-defendants." Because Dobbins submitted a sworn affidavit from Harris along with his petition, the allegation is more than an argumentative assertion without factual support. *See Opsahl,* 677 N.W.2d at 424 (concluding that sworn statements alleging the State pressured witnesses to give misleading testimony were more than "mere 'argumentative assertions' "); *cf. State v. Ferguson,* 742 N.W.2d 651, 660 (Minn.2007) (dismissing without prejudice a petition for postconviction relief because the petitioner submitted only an unsigned memorandum by a third party in support of his allegation that a witness recanted). Therefore, we assume Dobbins's allegation that King told Harris he shot Lavender is true and must determine whether this allegation would entitle Dobbins to a new trial. *See Ferguson,* 645 N.W.2d at 446 (assuming allegation of false testimony was true with a hearsay recantation affidavit as support); *Opsahl,* 677 N.W.2d at 423 ("We have interpreted [section 590.04, subd. 1] to require the petitioner to allege facts that, if proven, would entitle him to the requested relief."). If this allegation entitles Dobbins to a new trial if true, the postconviction court erred when it denied an evidentiary hearing.

We first address whether Dobbins has satisfied the first prong of the *Larrison* test. More specifically, whether a court would be reasonably well satisfied that King's testimony at trial was false if the court assumed that King told Harris he killed Lavender and blamed it on a co-defendant. *See Caldwell,* 322 N.W.2d at 585. As described in Harris's affidavit, King's statements to Harris are inconsistent with his testimony that Dobbins shot Lavender, and King helped Dobbins clean up the murder scene because King just

saw someone get shot and was scared. *Dobbins,* 725 N.W.2d at 498. As already described, King testified at trial that "Demetrius shot [Lavender] ... I saw it ... he just looked away and just put out the gun and shot him twice." Because King's trial testimony and his subsequent statements to Harris are inconsistent, one or the other is necessarily false. Given the context of the two inconsistent statements, there is likely a high probability that King would tell a friend the truth and lie at Dobbins's trial than for King to falsely admit to killing Lavender when he actually did not commit the crime. King had no incentive to admit to Harris that he shot Lavender, but he had an incentive to blame the murder on Dobbins. King entered into a plea agreement with the State in exchange for testifying against Dobbins and acknowledged at Dobbins's trial that his sentence could be 75 percent less than Dobbins's sentence because of his plea agreement. *Dobbins,* 725 N.W.2d at 499. We conclude that under these circumstances, assuming that King confessed to Harris, a court would be reasonably well-satisfied that King's testimony that Dobbins shot Lavender is false. *See Ferguson,* 645 N.W.2d at 446 (concluding that petitioner satisfied the first prong of the *Larrison* test for purposes of an evidentiary hearing when petitioner alleged key witness lied at trial and submitted an affidavit averring that a key witness recanted to the affiant).[5] We therefore conclude that Dobbins has satisfied the first prong of the *Larrison* test for purposes of an evidentiary hearing.

Dobbins has also satisfied the second prong of the *Larrison* test—that without the parts of King's testimony that were false, the jury might have reached a different conclusion. *See Caldwell,* 322 N.W.2d at 585. This prong presents a different question than that asked in a newly discovered evidence analysis or a sufficiency of the evidence analysis. We explained in *Ferguson* that the second prong of the *Larrison* test "is less stringent than what is required for new trials based on new evidence that does not involve falsified testimony." 645 N.W.2d at 444. Similarly, we explained in *State v. Turnage* that "the second *Larrison* prong does not ask whether the evidence was sufficient to convict the defendant in the absence of the recanted testimony." 729 N.W.2d 593, 599 (Minn.2007).

Dobbins testified that King actually shot Lavender, and Dobbins did not know of King's plan or conspire with King to kill Lavender. Evidence that King's clothing had gunpowder residue on it was admitted. Moreover, King was the State's key witness at trial. He was the only eyewitness other than Dobbins to testify and offered the only direct evidence at trial that Dobbins shot Lavender. Other evidence at trial, however, corroborated some of King's testimony, including that Lavender owed Dobbins money, investigators found gunpowder residue and Lavender's blood on Dobbins's clothing, and Dobbins and King were arrested when they were returning to the scene of the murder with lighter fluid. *Dobbins,* 725 N.W.2d at 497. Further, one of C.S.'s sisters testified that she saw Dobbins and King carry Lavender's body from the house to the shed and both sisters testified that Dobbins told them he shot Lavender. *Id.* at 499. But the evidence that corroborated King's testimony that Dobbins shot Lavender was mostly circumstantial. Because the State had little other direct evidence against

---

**5.** At the evidentiary hearing, the postconviction court does not have to assume that King confessed to Harris. The court will be free to weigh the credibility of the various actors and determine whether it is reasonably well satisfied that King's testimony was false.

Dobbins, and Dobbins's theory of the case was credible, we conclude the jury "might have reached a different conclusion" had King's alleged false testimony not been admitted. *See State v. Caldwell,* 322 N.W.2d 574, 587 (Minn.1982). We therefore conclude that Dobbins has satisfied the second prong of the *Larrison* test for purposes of an evidentiary hearing.

■ Dobbins's petition does not meet the third prong of the *Larrison* test—that the petitioner was taken by surprise at trial or did not know of the falsity until after trial. *See Ferguson,* 645 N.W.2d at 444. Dobbins alleges he saw King shoot Lavender; therefore, Dobbins knew of the falsity of King's testimony at the time of his trial. But the third prong of the *Larrison* test is not dispositive, and "the absence of surprise [does not] bar a claim for relief," especially in cases where the defendant has personal knowledge of the subject of the testimony and therefore could not be "surprised" by the falsity. *Id.* at 446.

Having concluded that the first and second but not the third prong of the *Larrison* test are met, we acknowledge that this is a close case. But we have said that "evidentiary hearings are particularly appropriate when the petition attacks important evidence in a circumstantial case." *Opsahl,* 677 N.W.2d at 423. In such cases, we have said that any doubts about whether to conduct a postconviction hearing should be resolved in favor of the petitioner. *Wilson v. State,* 726 N.W.2d 103, 107 (Minn.2007); *see also Opsahl,* 677 N.W.2d at 423 ("If the postconviction court harbors any doubts as to whether to conduct an evidentiary hearing, it should resolve those in favor of granting the hearing."). We also note that in cases when the question is one of who lied and when he lied, an evidentiary hearing is often appropriate so that the postconviction court can evaluate the witness or affiant's credibility. As-

suming the allegations in Dobbins's petition are true, and resolving doubts in Dobbins's favor, we conclude that Dobbins has sufficiently satisfied the *Larrison* test for purposes of determining whether he is entitled to an evidentiary hearing.

At this point, we note that our conclusion that Dobbins is entitled to an evidentiary hearing is supported by our decision in *Opsahl v. State,* a case in which we addressed a petitioner's claim that he was entitled to relief on an evidence-of-recantation ground. In *Opsahl,* we said:

> Although we are generally reluctant to challenge the basis for a conviction, we are more reluctant to deny a hearing for postconviction relief when our decision turns on the credibility of recanting witnesses. By concluding that the recantations were unreliable without first evaluating the credibility of the witnesses at an evidentiary hearing, the postconviction court misapplied Minn.Stat. § 590.04 . . . .

677 N.W.2d at 423–24.

The State asserts that the Harris affidavit contains inadmissible hearsay, presumably arguing that if the affidavit contains evidence that is not admissible, Dobbins is not entitled to relief. But the State does not cite any support for its argument that Dobbins is not entitled to relief because the affidavit contains hearsay, and our cases suggest that submitting an affidavit containing hearsay does not preclude a postconviction court from granting an evidentiary hearing. We have addressed similar factual situations in other postconviction cases. In *Opsahl,* the defendant alleged that five witnesses recanted their testimony. 677 N.W.2d at 419–20. The defendant supported the allegations with affidavits from three of the witnesses and two affidavits from third persons averring that a witness recanted to the respective affiant. *See id.* We did not distinguish

between the two types of recantation—direct recantation and hearsay recantation—and concluded that the postconviction court abused its discretion when it did not hold an evidentiary hearing to evaluate the credibility of the witnesses at an evidentiary hearing. *Id.* at 423–34.

In *Ferguson*, a key witness's father asserted in an affidavit that his son recanted the testimony he had given at Alonzo Ferguson's trial. Based on this information, Ferguson petitioned for postconviction relief. 645 N.W.2d at 441–42. We addressed the fact that the father's affidavit contained hearsay and acknowledged that the affidavit and any testimony regarding the son's statement to his father may be inadmissible. *Id.* at 443. But we also explained that the son could be subpoenaed to appear at an evidentiary hearing, possibly resulting in admissible evidence that the son lied at Ferguson's trial. *See id.* For example, the son might admit he lied at trial. *Id.* Or, if the son refused to testify, he would be unavailable and the hearsay may be admissible under an exception to the hearsay rule. *Id.* In *Ferguson*, we concluded the first two prongs of the *Larrison* test were satisfied and that the postconviction court abused its discretion when it did not hold an evidentiary hearing. 645 N.W.2d at 446.

Here, the State argues that Harris's affidavit includes hearsay that is not admissible under any of the hearsay exceptions. But the State does not address the possibility that King could confirm his recantation at an evidentiary hearing. Even if King does not confirm the recantation, a hearing would give Dobbins the opportunity to demonstrate that a hearsay exception applies and would give the postconviction court an opportunity to evaluate the credibility of the affiant and/or of King. *See Opsahl,* 677 N.W.2d at 423–24. The State's argument that Dobbins is not entitled to relief because the affidavit contains hearsay is not persuasive.

In conclusion, we affirm the postconviction court's order with the exception that we hold that the court abused its discretion when it found that Dobbins is not entitled to an evidentiary hearing regarding his claim of false testimony. Accordingly, we affirm in part and reverse in part and remand to the court to hold an evidentiary hearing to address whether Dobbins is entitled to postconviction relief on the basis of his false testimony allegation.

Reversed in part and remanded.

STRAS, J., not having been a member of this court at the time of the argument and submission, took no part in the consideration or decision of this case.