*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A13-2154**

State of Minnesota,
Respondent,

vs.

Ricky James Bedell,
Appellant.

**Filed January 20, 2015
Affirmed
Hudson, Judge**

Chisago County District Court
File No. 13-CR-11-809

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Janet Reiter, Chisago County Attorney, Nicholas A. Hydukovich, Assistant County Attorney, Center City, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Andrea Barts, Assistant Public Defender, St. Paul, Minnesota (for appellant)

        Considered and decided by Hudson, Presiding Judge; Larkin, Judge; and Stoneburner, Judge.*

_____

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

UNPUBLISHED OPINION

**HUDSON**, Judge

Appellant challenges his conviction of aiding and abetting third-degree assault, arguing that the evidence is insufficient to prove that he intended to aid his co-defendant in committing an assault and that the district court committed reversible error by instructing the jury without adequately explaining the "intentionally aiding" element of accomplice liability. Because the evidence is sufficient to sustain the conviction, and because the jury instructions, though plainly erroneous, did not affect appellant's substantial rights, we affirm.

## FACTS

A jury found appellant Ricky James Bedell guilty of aiding and abetting third-degree assault, in violation of Minn. Stat. §§ 609.223, subd. 1 (2010), 609.05, subd. 1 (2010), after a bar fight in Taylors Falls. At appellant's jury trial in 2013, a witness testified that she entered a bar one evening with several people. She testified that appellant, who was there with his girlfriend, M.L., slightly pushed E.L. at the jukebox and called him names. She testified that she then heard E.L. ask appellant why he was being a jerk and saw appellant punch E.L. and knock him out. She testified that M.L. then started punching, kneeing, and kicking E.L., and that appellant "was right there stomping on [E.L.'s] back, kicking his throat, his head, kicking his nose." M.L. was eventually pushed off, and E.L. managed to walk back to his house, where police responded after a 911 call.

E.L. testified that appellant pushed him and called him names, so that he finally walked up, shoved appellant, and asked what his problem was. He testified that appellant then fell to his knees, got up, and punched him in the face. E.L. testified that he did not threaten M.L. or recall speaking to her.

Another bar patron testified that she saw M.L. grab and hit E.L. on the ground and saw appellant tip over tables and swing chairs. She testified that M.L. then left the bar with appellant. Another witness testified that he saw E.L. push appellant, who then punched E.L. hard and that appellant "kind of stood back," as M.L. punched, elbowed, and kicked E.L. The patron testified that he was trying to hold appellant back, bar stools were flying, and that appellant got away from him. He testified that he did not see appellant kick or punch E.L. on the ground, but that when E.L. was propped up almost unconscious on a bar stool, appellant kicked him twice in the face.

M.L. testified that E.L. tried to get her to dance, grinding his body against hers, and that, when he would not stop, she pushed him off. She testified that the next thing she knew, E.L. was on the ground calling her names, so she got on top of him and struck him until someone pulled her off. She stated that she was angry because E.L. was severely intoxicated and grabbing her sexually, and nobody seemed to care. M.L. pleaded guilty to aiding and abetting third-degree assault as a result of the incident and testified that she committed an assault that evening.

The district court instructed the jury on the elements of aiding and abetting third-degree assault. The jury found appellant guilty, and the district court sentenced him to 29 months in prison. This appeal follows.

3

# DECISION

## I

An appellate court reviews a sufficiency-of-the-evidence claim by determining whether legitimate inferences drawn from the evidence would allow a factfinder to conclude that the defendant was guilty beyond a reasonable doubt. *State v. Pratt*, 813 N.W.2d 868, 874 (Minn. 2012). We will not overturn a guilty verdict "if, giving due regard to the presumption of innocence and the prosecution's burden of proving guilt beyond a reasonable doubt, the [factfinder] could reasonably have found the defendant guilty of the charged offense." *State v. Hayes*, 831 N.W.2d 546, 552 (Minn. 2013) (quotation omitted).

Appellant argues that the circumstantial evidence is insufficient to prove that he intended to aid M.L. in the commission of her assault. *See State v. Cooper*, 561 N.W.2d 175, 179 (Minn. 1997) (stating that because the intent element of a crime involves a state of mind, it is generally proved by circumstantial evidence). When reviewing the sufficiency of the evidence to support a conviction based on circumstantial evidence, such as proof of the element of intent, we use a two-step analysis. *Hayes*, 831 N.W.2d at 552–53. First, we examine the circumstances proved, deferring to the jury's acceptance of that proof. *State v. Andersen*, 784 N.W.2d 320, 329 (Minn. 2010). We then independently examine the reasonableness of inferences that may be drawn from those circumstances, *Pratt*, 813 N.W.2d at 874, including inferences of innocence as well as guilt, *Andersen*, 784 N.W.2d at 329. In this examination, all of the circumstances proved must be consistent with guilt and inconsistent with any rational hypothesis other than

4

guilt. *Id.* at 329–30. But a rational hypothesis that negates guilt must be based on more than mere conjecture. *Id.* at 330.

A person is guilty of aiding and abetting the crimes of another if that person "intentionally aids, advises, hires, counsels, or conspires with or otherwise procures the other to commit the crime." Minn. Stat. § 609.05, subd. 1 (2010). "[T]he element of 'intentionally aiding' embodies two important and necessary principles: (1) that the defendant 'knew that his alleged accomplices were going to commit a crime,' and (2) that the defendant 'intended his presence or actions to further the commission of that crime.'" *State v. Milton*, 821 N.W.2d 789, 805 (Minn. 2012) (quoting *State v. Mahkuk*, 736 N.W.2d 675, 682 (Minn. 2007)). A jury may infer the requisite state of mind for accomplice liability from a variety of facts, including the defendant's presence at the scene of the crime, a close association with the principal offender before and after the crime, a lack of objection or surprise under the circumstances, and flight with the principal offender from the scene of the crime. *State v. Hawes*, 801 N.W.2d 659, 668 (Minn. 2011).

Appellant argues that the evidence is insufficient to impose accomplice liability because the circumstances proved are consistent with a reasonable alternative hypothesis, that he intended only to commit his own assault, rather than to further M.L.'s assault. We reject this argument. The state charged appellant with assault both as a principal and as an accomplice to M.L.'s assault. *See* Minn. Stat. § 609.02, subd. 10(2) (2010) (defining assault as intentional infliction of or intent to inflict bodily harm); Minn. Stat. § 609.223, subd. 1 (2010) (defining third-degree assault as an assault resulting in the infliction of

substantial bodily harm); Minn. Stat. § 609.05 (defining accomplice liability). "[A]ccomplice liability is a theory of criminal liability, not an element of a criminal offense or separate crime." *Dobbin v. State*, 788 N.W.2d 719, 729–730 (Minn. 2010); *see also State v. Kramer*, 441 N.W.2d 502, 506 (Minn. App. 1989) (stating that "[t]here is no separate offense of 'aiding and abetting' . . . because it is not a substantive offense"), *review denied* (Minn. Aug. 9, 1989). Therefore, if the evidence is sufficient to convict appellant of third-degree assault as a principal, it is also sufficient to convict him on a theory of accomplice liability.

Here, the jury could reasonably have inferred from the evidence presented that appellant intended to commit an assault or to assist M.L. in her assault of E.L. "[I]ntent may be inferred from events occurring before and after the crime." *Davis v. State*, 595 N.W.2d 520, 526 (Minn. 1999). The state proved the following circumstances: that appellant entered the bar with M.L., threw an initial punch at E.L., engaged in the general melee during M.L.'s assault of E.L., and punched or kicked E.L. immediately after M.L.'s assault. On these facts, appellant has not shown the existence of a reasonable alternative hypothesis other than guilt, and the evidence is sufficient to support his conviction.

## II

Appellant argues that the district court's jury instructions on aiding and abetting, which he did not challenge at trial, amounted to plain error affecting his substantial rights. Under the plain-error analysis, appellant must establish (1) an error; (2) that is plain; and (3) that affects substantial rights. *State v. Griller*, 583 N.W.2d 736, 740 (Minn.

6

1998). If the three plain-error prongs are met, this court "then decide[s] whether we must address the error to ensure fairness and the integrity of the judicial proceedings." *Milton*, 821 N.W.2d at 805 (quotation omitted).

An error is plain if it "contravenes case law, a rule, or a standard of conduct." *State v. Ramey*, 721 N.W.2d 294, 302 (Minn. 2006). We evaluate whether an error is plain under the law existing at the time of appellate review. *State v. Kelley*, 855 N.W.2d 269, 277 (Minn. 2014). "[J]ury instructions must be viewed in their entirety to determine whether they fairly and adequately explained the law of the case." *State v. Flores*, 418 N.W.2d 150, 155 (Minn. 1988). "An instruction is in error if it materially misstates the law." *State v. Kuhnau*, 622 N.W.2d 552, 556 (Minn. 2001).

The district court instructed the jury as follows:

> First, the defendant aided and abetted the assault of [E.L.]. An assault is the intentional infliction of bodily harm upon another.
>
> Second, the defendant aided and abetted the infliction of substantial bodily harm on [E.L.]. . . . It is not necessary for the State to prove that the defendant intended to aid and abet the infliction of substantial bodily harm, but only that the defendant intended to aid and abet the commission of the assault.
>
> . . . .
>
> If you find that each of these elements has been proven beyond a reasonable doubt, the defendant is guilty. If you find that any element has not been proven beyond a reasonable doubt, the defendant is not guilty.
>
> Liabilities for the crimes of another. The defendant is guilty of a crime committed by another person when the defendant has intentionally aided the other person in committing it, or

7

has intentionally advised, hired, counseled, conspired with, or otherwise procured the other person to commit it.

The defendant is guilty of a crime, however, only if the other person commits a crime. The defendant is not criminally liable for aiding, advising, hiring, counseling, conspiring, or otherwise procuring the commission of a crime, unless some crime is actually committed.

Appellant maintains that the jury instructions misstated the law, based on the requirements set forth in *Milton*, 821 N.W.2d at 808. In *Milton*, which was decided prior to appellant's jury trial, the supreme court held that jury instructions amounted to plain error when they required the jury to find that the defendant "intentionally aided" his accomplice, but did not properly explain the meaning of this element to the jury. *Id*. at 807; *see also Mahkuk*, 736 N.W.2d at 682 (holding as error an instruction directing the jury to consider "[w]hether the defendant knew that a crime was going to be committed by the other participants" and "[w]hether the defendant intended his presence or acts to encourage or further the completion of the crime by the other participants").

Here, the district court instructed the jury that to find appellant guilty as an accomplice, it must find that he "intentionally aided" the principal. But the jury instructions did not define the meaning of "intentionally," nor did they explain that the state was required to prove that appellant knew that M.L. was going to commit a crime and that he intended his actions to further the commission of that crime. *See Milton*, 821 N.W.2d at 808. We agree with appellant that because these instructions failed to adequately instruct the jury on an element of the offense, they amounted to plain error under *Milton*.

8

We then review whether the error affected appellant's substantial rights. Substantial rights are affected if "there is a reasonable likelihood that giving the instruction in question had a significant effect on the jury verdict." *State v. Gomez*, 721 N.W.2d 871, 880 (Minn. 2006). The party challenging the instruction "bears a heavy burden of showing that [his] substantial rights have been affected"; the erroneous instruction is harmless absent a showing of prejudice. *Id.* Appellant argues that the error affected his substantial rights because it relieved the state of its burden of proving an essential element of aiding-and-abetting liability. *See Mahkuk*, 736 N.W.2d at 683 (holding that jury instructions relieved the state of its burden of proof when they left the impression that the jury did not need to find that the defendant "intended his presence to encourage or further the commission of the crime"). But the district court's instructions did not contain the language determined to be deficient in *Mahkuk*, and they informed the jury that it must find that appellant aided and abetted the commission of the crime. Therefore, they did not improperly shift the burden of proof from the state to the defense.

In addition, "[a]n erroneous jury instruction will not ordinarily have a significant effect on the jury's verdict if there is considerable evidence of the defendant's guilt." *Kelley*, 855 N.W.2d. at 283–84. Appellant argues that the prosecution did not present strong evidence on the specific-intent element of aiding and abetting. But the record contains uncontroverted evidence that appellant committed an assault as a principal, and his participation in the events immediately surrounding E.L.'s assault provides "considerable evidence" of his guilt as an accomplice. *See State v. Swanson*, 707 N.W.2d 645, 658–59 (Minn. 2006) (stating that accomplice liability attaches when one "plays

9

some knowing role in the commission of the crime and takes no steps to thwart its completion") (quotation omitted)).

Appellant also maintains that his substantial rights were affected because the prosecutor emphasized the deficient jury instructions by informing the jury during closing argument that, "[b]asically aiding and abetting is legal terminology for . . . intentionally playing a role in a crime." But the comment was brief, defense counsel addressed it in his closing statement, and on rebuttal, the prosecutor correctly informed the jury that "[i]f you start something and then do nothing to prevent the continuation of it by someone else, that's aiding and abetting." Thus, the prosecutor's comments at closing did not unduly confuse the jury and did not substantially prejudice appellant's rights.

Finally, we conclude that, even if the instructional error did affect appellant's substantial rights, it did not affect the fairness and integrity of the proceedings. Appellant presented his version of events through the testimony of M.L., who described her assault without reference to appellant's participation. We also note that appellant asserted a claim of self-defense, which was rejected by the jury. Under these circumstances, the error in instructing the jury on aiding-and-abetting liability does not warrant a new trial.

**Affirmed.**

10